23        223
21 SC   206

## Hallowell's Estate—Teas' Appeal.

1. The abatement of devises and legacies is always a question of interpretation, aiming to learn from the will and other proper circumstances what intention of preference or equality the testator had, so as to apply that intention in settling the duty of abatement or contribution when his expectations are partially disappointed.

2. On a deficiency of assets of a decedent's estate, devises and specific and demonstrative legacies are all liable to abatement in favor of each other.

3. Since land is assets for the payment of debts in this state, and is not in England, the English decisions in regard to abatement of devises and legacies are to be received with caution; and those only are strictly analogous in which the testator has charged his land with the payment of his debts, or in which the legacy fund is encroached upon by a debt that was in some way charged upon the land.

4. A devisee of land charged with a legacy is not a purchaser in such a sense as to free from liability to contribution in case of a deficiency of assets to pay debts and satisfy specific and demonstrative legacies. Remarks on the case of Hoover *v.* Hoover, 5 *Barr* 351.

5. A testator devised his land to two sons charged with legacies to another son, and gave legacies to that son and a daughter payable out of certain designated funds, and such funds were encroached upon or exhausted in the payment of debts: *Held* that the devises and legacies must abate in equal proportions, the devisees contributing to the deficiency of the legacy fund in proportion to the value of their devises.

CERTIORARI to the Orphans' Court of *Montgomery county*, in the matter of an appeal by George Hallowell, and also of one by John and Mercy Teas, from the decree of the Orphans' Court of Montgomery county.

A petition of Thomas B. Hallowell and Aaron Hallowell, acting executors of the will of Thomas Hallowell, deceased, was presented to the Orphans' Court, in which it was represented that their account as executors had been filed and confirmed, showing a balance in their hands of $974.49, which was insufficient for the payment of debts of the estate: and that the testator by his will devised the *whole* of his estate. They requested the appointment of an auditor to ascertain the amount of the debts, the value of each legacy and devise which was to be applied to the payment of the debts; or if the legacies and devises, or any of them, were to abate, then in what proportion, so as to raise sufficient to pay the debts, &c.

An auditor was appointed.

Thomas Hallowell died on the 27th April, 1848. By his will, dated 10th August, 1846, after providing that his wife should have certain privileges and $150, &c., he devised, *inter alia*, as follows:—

" I leave my daughter Mercy Teas eighteen hundred dollars that is standing out." She and her mother may take what linen, &c., they choose. I leave my son Thomas B. Hallowell forty-two acres

of land, &c. " Two hundred dollars,—Note to my son George Hallowell and the rest of the papers to be destroyed. He is to find his mother one cord of wood a year and fifty dollars a year. I *leve* my son Aaron Hallowell seventy acres of land, to him and his heirs for ever, with all the buildings, and he is to bring no charge against the rest of my estate, and is to pay my son George Hallowell $700 at five per cent.; he is to pay his mother $100 a year, and what more firewood she wants," &c. He next directed small legacies to his two sons Thomas and Aaron, and one to a grandson; and the rest of his "movables" to his three sons. He next proceeded : · "I leve my son George Hallowell two shares in the Centre Bridge, and he is to pay that $600 I borrowed for him, and interest upon *that bond* till my death; then the bond is to be destroyed." He appointed his three sons executors. Subsequently George was discharged as executor.

The widow of the testator died in May, 1848.

The articles taken by Mercy Teas and her mother were stated to amount to $55.50.

The auditor in his report intimated that *the bond* referred to in the will was a bond of the testator against his son George, for $1700, the balance of the principal of which was $1500; and that the two shares of bridge stock were valued at $8. The testator owned no other real estate than that which he devised to his sons Thomas and Aaron. The auditor stated that he adjudged the farm devised to Thomas Hallowell to be worth $3360, and that it was subject to the payment of $200 to George, and $50 yearly to the widow. The farm devised to *Aaron* he adjudged to be worth $7000, and that it was subject to a legacy of $700 to George, and to the annual payment of $100, &c., to the widow.

He stated the amount of legacies payable out of the *real* estate to be $900; and the amount of legacies payable out of the *personal* estate to be $3391. In the amount of legacies he included the bond of George for $1500, which was founded on the expression in the will—" and interest upon that bond till my death; then the bond is to be destroyed"—and on the words in connexion therewith. The bond was payable by George to his father.

He stated the amount of *debts* and expenses of settling the estate, as stated in a former auditor's report, at $1103.31; and that George Hallowell had obtained a judgment against the other two executors, on March 30, 1852, for $2819.25, which after deducting certain payments amounted to $2840.25. Expenses of auditing, &c., $70.90. The whole amounted to about $4014.46. The judgment in favor of George was founded on the bond for $1500 before referred to.

The amount of personal assets applicable to the payment of debts and legacies, he stated at $4377. In this amount was included the inventory, amounting to above $4000. In the inven-

[Hallowell's Estate—Teas' Appeal.]

tory was included the sum of $500, part of the $600 borrowed by the father for George, and also the bond of George to his father for $1500, the principal of which was released by the will.

The auditor observed that though the principal of the bond was released by the will, the balance of the bond was properly charged in the inventory, because the release of the debt operated only as a specific legacy, and that the debt was assets subject to the payment of debts, (2 *Williams on Executors* 1119,) and that it must abate with other specific legacies.

In relation to the legacies to Mercy Teas he observed that the bequest which related to the articles of property devised to her, amounting to $55.50, was a specific legacy. That the legacy to her of $1800 was a demonstrative legacy, viz., a legacy specific so far as the fund out of which it is payable was concerned, but general in respect to the rest of the estate. That it was payable out of the money outstanding at the date of the will or at the death of the testator, which at either time exceeded $2300; viz., more than sufficient to pay that legacy.

In relation to the question as to which of the legacies were liable to contribute to the *debts*, and consequently *abate*, he decided that the specific legacies and the demonstrative legacies, being payable out of the personal estate, were liable to abate *pro rata:* 2 *Williams on Executors* 1174.

As to whether the lands devised to Thomas and Aaron were liable to contribute, he referred to the case of Hoover *v.* Hoover, 5 *Barr* 357; 1 *Peere Williams* 403, Long *v.* Short; *Williams on Executors* 1444; and observing that according to the case of Hoover *v.* Hoover, and Glen *v.* Fisher, 6 *Johns. Ch.* 33, the devisees of the land, by acceptance of the land, became personally liable for the sums charged thereon, he considered that they were therefore purchasers for a valuable consideration; and he decided that the *lands* devised to Thomas and Aaron were *not* liable to contribute to the payment of debts till the entire personal estate was exhausted.

As to the question whether the *legacies* payable to George by the devisees out of the land were to contribute with the specific legacies to the payment of debts, he considered that this was involved in the decision that the lands were *exempt* from contribution; and he decided that the debts unpaid and the expenses of the audit were to be paid out of the balance of the personal estate, and the residue, if any, be divided among the specific and demonstrative legatees *pro rata.*

The auditor reported the amount of personal assets for distribution, including the $500 owing by George Hallowell, and his bond for $1500 and interest thereon, to be $3171.15.

The amount of debts, including George Hallowell's judgment, stated at $2840.25, and expenses $70.90, the auditor stated at

Hallowell's Estate—Teas' Appeal.]

$2911.15, leaving a balance unpaid of $260, which balance he directed to be paid to the legatees of personal estate, *pro rata*, viz., to Mercy Teas, after deducting $55.50, he reported $86.78 on account of her legacies, &c., &c.

Exceptions to the report were filed on the part of George Hallowell and of John and Mercy Teas, but the report was confirmed.

Appeal was taken by George Hallowell on the part of the exceptants. The second and third exceptions on the part of George Hallowell were to the effect that the Court erred in decreeing that he was not entitled to the whole of his judgment; and in decreeing that the balance of his bond, which, by the will, was directed to be destroyed, should be considered as part of the testator's personal estate. Fourth, in deciding that *the lands* devised to Thomas and Aaron were not liable to contribute to the payment of the debts until the entire personal estate was exhausted.

On the part of John and Mercy Teas, some of the exceptions were that the Court erred in deciding that the $1800 bequeathed to Mercy Teas was liable to be applied to the payment of debts and expenses. Fourth, in deciding that the lands devised to Thomas and Aaron were not liable for any part of the debts or expenses.

*Hirst* and *Boyd*, for appellants.—The *bond* referred to in the will was a bond for $1500, held by the testator against George. At the date of the auditor's report it amounted to $1696.66. This bond was to be *destroyed*. It could not be collected by the executors to pay debts, so long as any estate remained for that purpose. If it could not be collected to pay a debt to a stranger, how could it be liable to collection to pay an heir or legatee? The Court erred in treating it as part of the assets for distribution.

As to the legacy to Mercy Teas. By the decree of the Court Mercy Teas is to get but $142.28 instead of $1800 that was "standing out." The intention of the testator is to govern. That intention was that she was to have $1800 which was outstanding or invested when the will was made, and when the testator died. The testator knew he was indebted, and had but about $1800 of personal estate; and it was contended that he did not intend that the legacy to Mercy Teas should be applied to the debts when the two sons were getting twice or more of the estate than the legacy to her amounted to. If a legacy be given with reference to a particular fund only as pointing out a convenient mode of payment, it is to be considered as demonstrative, and the legatee will not be disappointed though the fund wholly fail: 4 *Harris* 275, Walls *v.* Stewart; 2 *Id.* 461, Balliett's Appeal; 5 *Barr*, Hoover *v.* Hoover, cited as to the order of the application of several funds to the payment of debts. Also, 2 *Powell on Dev.* 667–8; 2 *Penna. Rep.* 382, Duncan *v.* Alt; 10 *Barr* 387, Loomis' Appeal.

If, however, the legacy to Mercy Teas is to be regarded as a general pecuniary legacy, the most to be required is that it abate with the other legacies and devises.

The devisees of the land are not to be excused from contribution on the ground that they are purchasers, or on any other ground. They are not purchasers: 3 *Whar.* 492; 5 *Barr* 134. The payment of $200 and $700 to be made to George does not make them purchasers. These sums were not charged on the land: 7 *Barr* 242; 2 *Jones* 256, Wright's Appeal. The devisees took the land subject to the payment of debts.

*C. H. Stinson* and *Campbell,* for appellees.—The bond of $1500 to George was assets for the payment of debts. His own legacy abated towards the payment of his bond. Mercy Teas was not entitled to have her legacy free from liability for debts: 1 *Harris* 188, Ludlam's Estate.

The devises of land are not liable to abatement; 1. Because there was sufficient personal estate: 2 *Will. on Ex'rs.* 1149; 17 *Ser. & R.* 426; 2. Because it did not appear that the testator designed to exempt his personal estate: 2 *Harris* 461, Balliett's Appeal; 3. The devisees are purchasers: 6 *Watts* 167; 5 *Barr* 356; and are not to contribute till the rest of the estate is exhausted.

The opinion of the Court was delivered by

LOWRIE, J.—The auditor's report states the facts of this case to our entire satisfaction, and presents a single question for decision, depending upon the law as to marshalling of the assets of an estate among devisees and legatees. When the devises and legacies are all specific and demonstrative, must they all abate or contribute ratably to pay debts otherwise unprovided for?

Cases of this sort never arise, except when it is ascertained that the intent of the testator is about to be, to some extent, disappointed; and the question then presented is always one of interpretation, aiming to learn from the will and other proper circumstances, what intention the testator had as to preferences among his devisees and legatees, so as to apply that intention in settling the duty of abatement and contribution.

The history of the early labors in this, as in other fields of jurisprudence, exhibits many conflicting efforts and unsuccessful experiments in the endeavor to bring it into a state of proper order and consistency; and the experience thus acquired cautions us against delusive and untried theories, and inspires us with confidence in well-established results. But we must not forget that these results consist of rules for ascertaining the intent that are only general in their character, and are subject to many exceptions in their application, and that some of them require to be modified

with us, because they depend upon legal institutions that have no existence here.

We have at hand illustrations of this last remark that bring us right to the very point of the present case. In England land is not regarded as general assets for the payment of debts, and therefore with them, in cases of this sort, specific devises are considered as being intended to be preferred over specific legacies. And this is a necessary conclusion, for that which is not, in law or equity, liable for debts, cannot be called upon to contribute to the relief of that which is. But this rule does not include specialty debts, for land is liable for them, and therefore, as to them, devises and specific legacies must contribute ratably: 1 *P. Wms.* 403; *Ibid.* 730; *Cases Temp. Talb.* 54. And land that is allowed to descend to the heir must bear the burden of such debts, rather than disappoint either specific or general legacies; because these, being specially provided for, are presumed to be preferred: 3 *Ves. Jr.* 118; 2 *Atk.* 437; 2 *Bro. C. C.* 263; 3 *P. Wms.* 367; 3 *Madd.* 453; 2 *Powell on Devises* 667; 3 *Johns. Ch. R.* 319. And when a testator charges his lands with the payment of debts generally, then they become assets for that purpose: 7 *Ves.* 322; 2 *Bro. C. C.* 94; and then devises and specific and demonstrative legacies stand upon an equality in cases where an abatement is required: 2 *P. Wms.* 382; 3 *Id.* 323; 1 *Id.* 730; 1 *Dickens* 384; 1 *Bro. C. C.* 138 n.; 2 *Bos. & Pul.* 310; *Ram. on Assets* 378.

With us land is assets for all sorts of debts; and by adding this element to the results already obtained, it becomes plain, that though the personal estate is, in legal contemplation, the primary fund for the payment of debts, yet this rule does not apply, as between legatees and devisees, where a particular portion of the personal estate is set apart for legacies, because, in such cases, without other circumstances, there is no evidence of an intention to prefer devises over legacies.

It is supposed, however, that the fact that the devises, in the present case, are charged with the payment of a portion of the legacies, is a circumstance showing a different intent. The argument is, that one who accepts a devise charged with a legacy, takes it as a purchaser, in the ordinary sense of that word, and is personally liable for the legacy in any event; and Hoover *v.* Hoover, 5 *State Rep.* 351, is relied upon for this. Even if the devise and its acceptance were intended as a contract of purchase and sale, this would not be entirely true, for then the devisee or purchaser would be entitled to relief from the charge or purchase-money on the failure of the title, or he might apply it in discharging liens; a principle that was overlooked in Hoover *v.* Hoover.

There are no doubt cases in which devisees do stand in the character of purchasers; but in ordinary cases they are treated so only for the purpose of raising a technical promise in support of

the forms of a common law action. It is certainly not a purchase that would avail as such against creditors. The promise is implied as a means of enforcing an obligation imposed by the giver as part of the law of the gift. In equity it is enforced as a trust, in law as a promise. But if circumstances show that the obligation does not really exist, as where the devisor's creditors take the land for their debts, then a promise or trust will not be implied; but the question will arise, how shall the devisees and legatees contribute as to the debts?

This principle having been overlooked in Hoover v. Hoover, a devisee was treated as a purchaser of land, and made to pay the full consideration, without any allowance for the general liens against the vendor or devisor, which he had been and might be compelled to pay. His land was made a primary fund to pay debts, and the legacies charged upon it were relieved from abatement. And the rule that specific and demonstrative legacies, 2 *Dall.* 243, 1 *P. Wms.* 693; and even general ones, 2 *P. Wms.* 335, *Cases Temp. Talb.* 54, shall not be defeated or prejudiced in order to pay a mortgage or other specific lien created by the testator in his lifetime, was extended to a case of general lien.

The case of Loomis' Appeal, 10 *State Rep.* 387, is very different, and decides the very question of this cause, that, on a deficiency of assets to pay debts, devises and specific or demonstrative legacies are equally liable to abate. One remark of Chief Justice GIBSON is so appropriate here, that a quotation of it will be indulged. "To suffer the legatees to be deprived of their fund, in violation of the testator's plain directions, would give the devisees all the available part of the estate, and cut up his plan of distribution by the roots." And such would be the result of the rule insisted upon here; but we cannot so disappoint the will: 1 *P. Wms.* 694; 2 *Id.* 190, 335.

These remarks indicate the principle that governs the question of contribution; and the valuation and other facts found by the auditor, and not excepted to, enable us to settle the proportions.

DECREE.—May 17th, 1854. This cause came on to be heard at the last March Term at Philadelphia, on appeals taken by George Hallowell and Mercy Teas from the decree of the Orphans' Court of Montgomery county, in the marshalling of the assets of the estate of Thomas Hallowell, deceased, and was argued by counsel; and therefore, on full consideration thereof, it is ordered, adjudged, and decreed, that the decree of the said Orphans' Court be reversed and annulled; and this Court, now proceeding to make such decree in the cause as the said Orphans' Court ought to have made, do further order, adjudge, and decree, that the devise to Aaron Hallowell shall, for the purposes of this pro-

U

ceeding, stand as valued as at the testator's death at the sum of six thousand three hundred and seventeen dollars and 66⅔ cents ($6317.66⅔), the devise to Thomas B. Hallowell at three thousand one hundred and sixty-five dollars and 66⅔ cents ($3165.66⅔), the legacies to George H. Hallowell at two thousand four hundred and ten dollars and 66⅔ cents ($2410.66⅔), and the legacies to Mercy Teas at eighteen hundred and fifty-five dollars and 50 cents ($1855.50); and that, in order to supply the deficiency of the other assets to pay the debts, the said several devisees and legatees shall respectively contribute in these proportions: that is to say, the money in the hands of the executors amounting, after paying thereout the costs of this proceeding, to the sum of $884.49, is ordered to be paid to Mercy Teas; then the balance of debt and interest due to George Hallowell on his judgment, after deducting the debt and interest due to the estate by him, is $2227.22; and the legacy and interest due to Mercy Teas, after the payment above directed to be made to her, is $1464.51; and these two sums make up the deficiency to be supplied, to wit, $3691.73; and, in order to apportion the said deficiency among the said several devisees and legatees, it is ordered and decreed that the judgment of George Hallowell, one of the legatees, be abated to the sum of $1579.96; that the balance of the legacy due to Mercy Teas, after the payment above provided for, be abated to the sum of $966.31; and for the payment of the said balances according to equity, it is ordered, adjudged, and decreed, that the said Aaron Hallowell do, on account and out of the land devised to him, pay to George Hallowell the said sum of $1579.96, in full of his said judgment, and to Mercy Teas the sum of $116.31, on account of her legacy; and that the said Thomas B. Hallowell do, on account and out of the land devised to him, pay to Mercy Teas the sum of $800; which said sums shall be paid by the said Aaron and Thomas respectively within six months from this date with interest; and this cause is now remitted to the said Orphans' Court, with instructions to carry this decree into effect.