# Lowry's Appeal.

The Orphans' Court has jurisdiction to determine all questions necessary to a proper disposal of matters as to which jurisdiction has been expressly conferred; in this case to determine whether a parol trust had been created or not.

| 114 | 219 |
| 161 | 342 |

| 114 | 219 |
| 21 SC | 206 |

| 114 | 219 |
| 32 SC | 208 |

January 8th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Philadelphia County:* Of January Term, 1885, No 128.

Appeal of Annie L. Lowry, trustee under the will of Mary Lane Davidson, deceased, for Richard A. Carden, Jr., from the decree of said court disallowing her credit claimed in her account for a mortgage and two ground rent deeds, in which it was alleged by her and denied by Richard A. Carden, Jr., the appellee, that she had invested the trust funds under the will.

By the will of Mary Lane Davidson, who died on the thirteenth day of April, 1883, which was admitted to probate at Philadelphia on the twenty-third day of April, 1883, she provided, *inter alia*, as follows:—

"I give, devise and bequeath unto my sister, Annie Louisa Lowry, the sum of ten thousand dollars ($10,000) in trust, to keep the same invested in safe securities, at interest, and hold the same in trust for Richard Arthur Carden, Jr., adopted by and now residing in our family. I further direct that the income arising from the said sum of ten thousand dollars ($10,000),

so as aforesaid invested, to be paid to the said Richard Arthur Carden, Jr., semi-annually, for his own benefit, but the principal sum of ten thousand dollars ($10,000) shall be kept safely invested until the death of the said Richard Arthur Carden, Jr.; and I then direct that the same shall be divided equally between my sisters, Sarah Kenworthy Davidson and Annie L. Lowry, share and share alike, if both are then living, but if either of my sisters have died, the survivor is to have the whole sum. If neither of my sisters are living at the time of the decease of the said Richard Arthur Carden, Jr., I direct the said sum of ten thousand dollars ($10,000) to be equally divided between the four (4) named institutions, as follows," etc.

She named as executrices of her will her two sisters, Annie Louisa Lowry and Sarah K. Davidson, to whom letters testamentary were duly granted by the Register of Wills for said county.

Mrs. Lowry filed her account as trustee under the will of Mary Lane Davidson for Richard Arthur Carden et al. in the month of April, 1884. In it she charged herself with the sum of $10,000 received from the estate of Mary Lane Davidson on the twenty-second day of May, 1883, and asked credit, under date of 22d May and 24th May, 1883, for an investment of $10,000, in three securities, one a bond and mortgage of Alexander M. Smith on No. 1742 N. Sixteenth street, for $5,000; another a ground rent of $150 per annum, issuing out of No. 2640 N. Eleventh street, and the third a ground rent of $150 per annum, issuing out of No. 2642 N. Eleventh street.

It was not pretended that these were not first rate, legal securities. The mortgage had been assigned by a third person on the twenty-second day of May, 1883, by an assignment recorded 24th May, 1883, to "Annie Louisa Lowry, trustee for Richard Arthur Carden, Jr., under the last will and testament of Mary Lane Davidson."

The ground rents were conveyed by Joseph D. Thornton to Annie Louisa Lowry, widow, on the twenty-fourth day of May, 1883. These were accompanied by her declarations of trust, dated 7th July, 1883, setting forth that they had been purchased with moneys bequeathed to her in trust by her sister, Mary Lane Davidson, and that they were held by her as trustee, "named in and appointed by the last will and testament of Mary Lane Davidson."

At the audit of the said account before PENROSE, J., Carden objected to said investments as the learned Judge reports: "Not because of any insufficiency of the securities, but because it was alleged that the securities themselves had pre-

viously been set apart for another trust created for the said Richard A. Carden, Jr., and that to permit them now to be transferred to the present trust involved a violation of the principles of equity applicable to cases of this description."

The following is taken from the opinion of PENROSE, the auditing judge :

"Richard A. Carden, Jr., testified that soon after the death of the testatrix he had been informed by Mrs. Lowry, and also by her co-residuary legatee and executrix, that the testator had requested them to increase the trust mentioned in her will, by the addition of $10,000, and that they had promised her to do so ; that in pursuance of such promise, the mortgage and ground rent, for which credit is now claimed in the account, had, as they told him, been set apart from the general assets of the estate, for the parol trust so created ; and that two mortgages, one for $8,000, on premises 1322 North Fifth Street, and one for $2,000, on 225 Jacoby street, had been set apart for the trust arising under the will."

The witness further testified that payments of income from these securities had been actually made to him under the parol trust.

Richard A. Carden, Jr., as it was shown, was taken by the testatrix and her sisters, Mrs. Lowry and Miss Sarah K. Davidson, when he was a child of three years of age, and brought up as one of their own family. He had no means whatever of his own, but was fed, clothed and educated at their expense. No son could have been treated with more affection and indulgence. The ladies whom he was taught to call 'cousin' had the most implicit confidence and trust in his goodness and integrity; and they fully believed that their love for him was entirely deserved, and that it was fully reciprocated.

The testatrix was ill for about two weeks, during the greater part of which time she lay in a state of unconsciousness. A day or two before her death, however, she rallied, and as the exception relies upon what then occurred as giving rise to the trust which is the ground of his exceptions, it is better that it should be told in the language of the witness, Mrs. Sarah K. Davidson, whose testimony is in entire accord with that of her sister, the accountant.

On Wednesday at three o'clock,' said the witness, 'when all the family and Mr. Carden were at dinner, I was alone with her. She was very ill indeed, but still she had intervals of reason, and she said to me 'Sarah, I have been thinking a great deal about Dick ; I have loved him very much, as we all had, for he had earned our best affections. I feel that I would like to add a little to his trust, if you are willing. I have left you and Louisa, after a few legacies to friends, the residuary part

of my estate. It is all yours, and I have thought, since I have been on my sick bed, that if you were willing, and he remains with you, and is a good boy, I should like to add $5,000 or $10,000, which ever you please, to his trust, when you please.' I said Mary, certainly, your words should be as your will, as regards your instructions. Have you spoken to my sister Louisa about it?' She said, 'I have, this morning. I have told her just what I told you.' I said 'you may rest assured that what you wish shall be done.' Had it been a bequest to any one else, I would have doubted if her mind was clear; but we all loved him, and we were perfectly willing to give him the largest amount, provided he was true to us. There was nothing more said about it until after her death, when Louisa asked me if she had said anything to me about it, and I repeated what she had said. She then said, 'would you be willing to give him $10,000?' I said 'If he complies with the conditions.' I said 'Nothing will give me greater pleasure than to see him have everything that this world can give, if he is true to us. We have had him from his infancy, and we have loved him as our own life.' I agreed then to give it to him, provided these conditons were complied with, and as regards the interest on the money, I had not the slightest objection to paying it to him when my sister asked me about it. It was a mere gift and we did not want him to be without means; he never worked, and therefore we kept him as a gentleman, as well as we could.'

After the death of the testatrix, Mrs. Lowry told the exceptant, who was then a young man of about twenty-three or twenty-four years of age, what had been said, and with the assent of her sister, but without making any transfer, set aside two mortgages, intending to give him the interest, and in point of fact actually paying it to him, in addition to that given by the will.

On the evening of the 10th of December, 1883, a robbery of a most extraordinary character was perpetrated at the residence of the accountant and her sister, of which the exceptant was still an inmate. It was clear that it could only have been done by some one in the house.

At this time the ladies still believed implicitly in the exceptant; but a letter written by him to a third person was placed in their hands, and they were thus shown, by evidence which admitted of no contradiction, that he had fallen into evil courses, and that he was false, unprincipled and utterly base.

It is unnecessary to go into the details of this robbery. It is enough to say that it became clear that the servant had been greatly wronged by the suspicions; and that the facts with regard to it have been disclosed incidentally in the course of the settlement of the present account, instead of by a prosecution

in the Court of Oyer and Terminer, is accounted for only by the forbearance of the victors and their unwillingness to bring to ruin and public disgrace one whom they had for so many years loved and protected.

The trust which had been voluntarily assumed was a conditional one. It was not intended to last if the beneficiary proved unworthy, and it was terminated because, as the accountant stated, ' his life and character were found to be such that if the testatrix were now here she would not only withdraw her request, but commit her will to the flames.' "

The credits were allowed as proper investments of the trust fund.

Nine exceptions to his adjudication were filed by Carden's counsel, which claimed error in not deciding that a bond and mortgage of McConnell for $8,000, and another of Gardner for $2,000, which had belonged to the said Mary Lane Davidson at her decease, had been set aside and held by Annie Louisa Lowry, as trustee for Carden under the will; in deciding that the Smith mortgage and the two ground rents were investments of the fund bequeathed by the will; in deciding the question of the validity of the said parol trust; in deciding that said parol trust was a conditional one voluntarily assumed; in deciding that said parol trust was not intended to last if the beneficiary proved unworthy; in deciding that said parol trust was terminated because of the bad character of Carden; in admitting evidence of the robbery; in admitting as evidence tending to affect Carden's character, a letter in his handwriting; in confirming the trustees' account.

The exceptions were sustained in the court below, and the adjudication was modified by disallowing the credits claimed by the trustee for said investments.

HANNA, P. J., held "the existence of the parol trust alleged to have been declared by testatrix and assumed by accountant, cannot be determined in this proceeding, nor by this court." He assumed that it was conceded the investments claimed had not been investments of the trust created by the will, and that there had been a prior setting apart of the investments for which credit was claimed as investments of the so-called "parol trust " fund; asserted that investments thus set apart for another trust could not be claimed as belonging to the one before the court, and that the court had no jurisdiction to determine the issue raised by the accountant, viz., that there was no such trust, and, therefore, no investments of the same. He decided: " The *cestui que trust* may, with good reason, hold the trustee liable for the investments of each fund, especially where, as here, the trustee accounts for and recognizes one trust, but repudiates the other. Without disputing the right

of the trustee as to the latter, it seems but reasonable that the investments of the trust, accepted and recognized, be produced. And upon failure so to do the trustee should be charged with the trust fund in cash as remaining uninvested. After a careful consideration of the subject, we are of opinion this course should be adopted in the present case. This in no wise prejudices the right of the trustee to contest the enforcement of the parol trust."

In his concurring opinion ASHMAN J. assumed that the trustee had set apart distinct securities for the two separate trusts, and rested his concurrence upon such assumption. He said—"If it be true that a trustee who has set apart distinct securities for two separate trusts can, at her discretion, appropriate the investments interchangeably for the purposes of either trust, the beneficiary had no reason to complain in this instance, and the decree of the auditing judge might well be sustained." He conceded what the President Judge denied, viz., that the court having the matter within its grasp, had a right to pass judgment upon the validity of the "parol trust."

He held that there had been a trust created by the sisters who survived, out of their own money, without any limitation and without any power of revocation. "It was manifested by more than a mere declaration to the *cestui que trust*, although that would have been sufficient. The declaration was preceded or accompanied by an actual setting apart of securities, and was followed by a payment of the interest. . . . . . Could the trustees vacate a trust which, without any qualification, they had created? . . . . . Equity will not interpose when the trust rests in a mere engagement to create it; but where nothing remains, as here, to be done by the trustee, the court will take jurisdiction."

PENROSE, J. adhered to his adjudication, maintaining that inasmuch as it had been asserted that the securities in controversy had been appropriated to another trust, the court whose duty it became to pass upon the truth of such assertion, had the requisite power to pass upon all the facts involved in the decision. He argued that the parol trust was conditional upon Carden's being a good boy and remaining with the surviving sisters, and that before the securities, which the latter intended to set apart, had been transferred from the general estate, the discovery of his inability to meet the requirements of the conditions had been made. He contended that equity would not enforce a parol trust in favor of a volunteer, where anything remained to be done to complete the transfer of title, if it appeared that the parol execution had taken place under a mistake of fact. He stated that the evidence showed that even if certain other securities had originally been intended to be

transferred to this trust, " the securities referred to never were in point of fact assigned."

The said exceptions of Richard A. Carden, Jr., were accordingly sustained, and a decree entered refusing to allow the accountant credit for mortgage and ground rents.

From this decree she took this appeal assigning for error the action of the court in sustaining said exceptions, and the entry of said decree.

*John G. Johnson* and *Lewis D. Vail* (*Edward Shippen* with them,) for appellant.

*William Mintzer* and *Thomas J. Diehl*, for appellee.

Mr. Justice TRUNKEY delivered the opinion of the court, October 4th, 1886.

On May 22d, 1883, a mortgage for $5,000 was assigned to " Annie Louisa Lowry trustee for Richard Arthur Carden, Jr., under the last will and testament of Mary Lane Davidson ;" and on the 24th of same month two ground rents were conveyed to her, each $150 per annum. For these securities the trustee paid $10,000. She executed a declaration of trust on July 7th, 1883, reciting that the ground rents were purchased with moneys bequeathed to her in trust, and that they are held by her as trustee " named in and appointed by the last will and testament of Mary Lane Davidson."

On June 9th, 1883, Annie L. Lowry, trustee, executed an acknowledgement of the receipt of $10,000 from the executrices of the will of Mary Lane Davidson, in satisfaction of the legacy " to be held in trust, in and by the said last will and testament." The executrices have not settled their accounts. Nor did they as executrices, or otherwise, make a written declaration vesting or designating any part of the estate for use of the appellee, except the mortgage and ground rents described in the account.

The appellee seeks to establish a parol trust created after the death of Mary L. Davidson, by Sarah K. Davidson and Annie L. Lowry, and that the money paid for said mortgage and ground rents belonged to said parol trust. His interest in the sustaining of his exceptions, if any, arises from such trust. Failing to establish that trust, it matters not what money was used in payment for the securities. Unless he shows its existence he is without footing to except to the account. Testimony adduced to prove it may be rebutted. This involves adjudication, and if the Orphans' Court has no jurisdiction, the adjudication must be elsewhere before the alleged trust can be made the base for reformation of the ac-

count. At the outset the appellee testified that the accountant declared to him the existence of the alleged trust, and that she had set aside cash for that; and in the appellee's brief it is said that "a valid parol trust had already been declared for Carden's benefit, upon the $10,000 in cash."

The learned president judge of the Orphans' Court denies its jurisdiction to determine the existence of the alleged parol trust; but he recognizes the fact that the appellee has no meritorious standing to except, unless the credits claimed actually belong to that trust, and therefore he says, "The *cestui que trust* may with good reason hold the trustee liable for the investments of each fund, especially where, as here, the trustee accounts for and recognizes one trust that repudiates the other." The recognized trust is created by the will; the repudiated trust is only shown by oral testimony, and must be assumed to exist before money or investments may be said to belong to it. In the concurring opinion it is conceded that the Orphans' Court has jurisdiction to administer full relief, and it is held that the trust now sought to be invalidated is purely *inter vivos*, and though prompted by the suggestion of the testatrix, it was created by the sisters out of their own money. This seems the true view. If, indeed, such trust was created, it was the act of the surviving sisters of the decedent, and if there was no limitation or condition it was irrevocable without the assent of the person for whose use it was created.

Within a short time after the death of the testatrix the mortgage for $5,000 and the ground rents were purchased and transferred expressly for the trust created by the will. This transaction was six months before the executrices, or trustee, had lost confidence in or affection for the appellee. It was when they intended to make an additional trust for the larger sum that had been suggested by the decedent in her lifetime. The accountant bought the securities and received them stamped with unmistakable appropriation, inconsistent with the allegation that other securities had already been placed to the same use. Afterwards she executed the release dated July 9th, 1883. All the writings relate to the same trust.

That the accountant and her sister intended in the future to create a trust of $10,000 for use of the appellee during his life, is admitted; and the accountant also admits that in the meantime she intended to give him the interest or income, and did give it to him for six months. Before the intention was executed the accountant was advised not to make the transfer until the expiration of a year, the time she had for settling the estate, and to take the $10,000 in cash under the will, which advice she followed.

The appellee relies on his own testimony to establish the

trust, corroborated by the said payment of interest. He says that three days after the death of the testatrix, both sisters told him of her request, and that they intended to carry it out to the letter; and that two or three weeks thereafter Mrs. Lowry told him that the McConnell and Gardner mortgages, which had belonged to the decedent, had been set aside as the money left him by the will, and that they had set aside cash for the extra trust. Mrs. Lowry testifies respecting the extra trust, or discretionary $10,000, that it occurred to her, to save her trouble, that she could put the two mortgages aside, and hand the interest over to the young man, that she gave him the interest because she felt interested in him, and intended to give him the $10,000 in trust, if he was a good boy; and she positively denies that she told him the purchase of the securities was for the extra trust.

Mrs. Lowry's testimony shows that if the McConnell and Gardner mortgages were set aside at all, it was for the extra trust, not the trust under the will. The auditing judge has well shown that the credit of Carden is not such that the pivotal fact in his case can be found on his testimony alone, especially against that of the accountant. Unless it be true that the McConnell and Gardner mortgages were set aside for the trust under the will, the exceptions fall.

The auditing judge finds that the accountant, " with the assent of her sister, but without making any transfer, set aside two mortgages, intending to give him the interest, and in point of fact actually paying it to him, in addition to that given by the will." He properly omitted to find that the securities for which credit is claimed in the account, were purchased for a use other than that stated in the writings; or that said securities were purchased with money designed for another use. The findings of facts were quite as favorable to the appellee as the evidence warranted, and we think fail to show an actual creation of the alleged trust without the will, to which the securities named in the account had been appropriated.

> Decree reversed, the exceptions dismissed, and the account confirmed. Appellee to pay the costs.