# Kunkle's Estate.

*Practice, O. C.—Rules of court—Construction of rule.*

Upon a question of the construction or application of its own rules, the orphans' court can be reversed only for manifest and material error.

Where a rule of court provides that in order to entitle a supplemental petition or a replication to be received as conclusive proof of the facts therein alleged which are not denied by counter affidavit, it must be " duly filed on record in the case," a finding of the orphans' court that the affidavit was not " duly filed " at such time as made it incumbent upon the adverse party to file a counter affidavit, will not be reversed by the appellate court, where there is nothing in the record to convict the lower court of error in so finding.

*Practice, O. C.—Legatee's day in court—Abatement of legacy—Estoppel.*

A legatee whose legacy has been abated for the payment of debts in proceedings before an auditor and the orphans' court, cannot in a subsequent proceeding in the same court be heard to complain of such decree because she had not her day in court, where the record showed that the parties in interest attended at the first hearing, that the legatee was awarded and paid a small sum which she claimed as a debt against the estate, that notices were sent out by the auditor as to the date of filing his reports, and that the reports were confirmed.

*Orphans' court—Equity powers—Marshaling assets.*

The orphans' court has jurisdiction to marshal the assets of a decedent's estate between legatees and devisees. Such jurisdiction may be exercised without a formal petition, by exceptions filed by a devisee and creditor to a report of an auditor, because abatements of legacies had not been made. In such a case an order referring the matter back to the auditor enlarges the scope of his duties whatever they may have been under his original appointment.

*Devise—Charge on land—Interest—Abatement of legacy.*

Where a devisee of land subject to a life estate takes the land charged with the payment of certain legacies after the death of the life tenant, and the devisee is also a creditor of the estate, and the orphans' court makes a decree abating the legacies, and directing that the abatement shall bear interest, the court will, after the death of the life tenant, direct that interest on the abatement shall be computed from the date of the former decree until the death of the life tenant, and that the abatement with interest thereon as thus computed shall be deducted from the legacy, and that the balance thus ascertained shall be paid by the devisee to the legatee.

Argued April 22, 1902.   Appeal, No. 131, April T., 1902, by Catharine C. Helman, from decree of O. C. Westmoreland

County, May T., 1899, No. 23, dismissing petition for the payment of a legacy in the Estate of John L. Kunkle. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Decree modified.

Petition for the payment of a legacy for charge on land.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree of the court dismissing the petition.

*W. A. Griffith*, with him *V. E. Williams* and *A. M. Sloan*, for appellant.—An authorized decree of an orphans' court will not stand until reversed in a regular course of appeal, but may be questioned in a collateral suit by or against a person claiming under that decree: Messinger v. Kintner, 4 Binney, 97; Snyder v. Snyder, 6 Binney, 483; Smith v. Wildman, 178 Pa. 245; Spencer v. Jennings, 123 Pa. 184; Torrance v. Torrance, 53 Pa. 505; Grier's App., 101 Pa. 412.

So far as the executors were concerned, upon discovering this deficiency, their only course of procedure was to come into court upon petition for any order to sell real estate, unless the will itself gave them power to sell and convey land for that purpose: Smith v. Wildman, 178 Pa. 245; Knecht's Appeal, 71 Pa. 333.

The auditor appointed to distribute the assets in ascertaining the amount in the hands of the administrator, to be distributed, is confined to the decree of the orphans' court: Wither's App., 16 Pa. 151; Benson's App., 48 Pa. 159; Drysdale's App., 14 Pa. 531; Willis v. Willis, 12 Pa. 159.

*John B. Head*, with him *James S. Moorhead*, for appellee.

OPINION BY RICE, P. J., October 13, 1902:

By his will, dated in January, 1874, and admitted to probate in June of the same year, John L. Kunkle gave certain personal chattels to his wife, and directed his executors to sell the residue of his personal property, and out of the proceeds pay his debts and funeral expenses, also to sell his house and lot in the borough of Adamsburg, and to divide the balance of the

fund derived from these sources, remaining in their hands upon final confirmation of their accounts, among his children.   The executors sold this real estate and charged themselves with the proceeds of sale in the accounts to which we shall hereafter refer.

The testator also mentioned in his will a certain twenty acre tract, but as it does not affirmatively appear in the pleadings or proofs that he died seized of this tract, we deem it unnecessary to allude to the provisions of the will relative thereto.

To his son, John L. Kunkle, Jr., he devised his farm, subject to a life estate therein in favor of his widow, "at the appraised value of $12,000," which he charged on the land, and directed the devisee to pay, in shares of $2,000 each, to his five daughters and the children of a deceased son.   He also provided that payments were to be made in annual instalments of $1,000 each, beginning upon the death of his wife, and fixed the order in which each legatee was to be paid.   In the same connection he provided as follows: "As I have notes against my son David to the amount of two thousand dollars, he is to get no share of the twelve thousand dollars, and I direct said notes to be canceled and delivered up to him."

The life tenant died in 1894, and under the terms of the will, above referred to, $1,000 became payable to Mrs. Helman, a daughter of the testator, on April 7, 1899, to enforce payment of which she filed her petition under the 59th section of the Act of February 24, 1834, P. L. 84.   On behalf of himself and his assignees for benefit of creditors, who were made parties to the proceeding, the devisee answered, that, in accordance with a decree of the orphans' court made in 1878, he had retained out of the legacy the sum of $374.02¾ with interest thereon from December 16, 1878, and that the balance, if any, he was then ready, and had at all times been ready, to pay. From the decree sustaining his claim to make this deduction the petitioner took this appeal.

The first question to be considered is as to the effect of the decree made in 1878.   It appears that in 1876 the executors, David Kunkle and John L. Kunkle, Jr., filed separate accounts, and in July of the same year the court appointed an auditor "to pass upon the exceptions and distribute the fund in the hands of the executors to and among those legally entitled to

the same." None of the exceptions to the accounts being sustained, the auditor reported that the balance in the hands of the executors was $297.01, and that the debts of the testator amounted to $2,963.23, of which the sum of $2,776.19 consisted of the principal, and interest to that date, due on notes drawn by the testator in favor of John L. Kunkle, Jr. Instead of distributing the fund pro rata among all the creditors, the auditor, after deducting the costs and expenses, applied the remainder of the fund in the accountants' hands " to the payment of the smaller claims, leaving the large ones to remain at interest until after the decease of Mrs. Sarah J. Kunkle," widow, when, as he suggested, " there must be an abatement of legacies and devises" in order to pay the debts due to the devisee. Among the smaller claims above referred to was one of $5.00 in favor of the appellant. All of these claims were thus provided for, leaving only the debts due the devisee unprovided for. He excepted to the report upon the grounds, inter alia, that " the auditor erred in .deciding that the debts could not be paid until the death of the widow ; " that " if an abatement of legacies and devises be necessary, it was the duty of the auditor to make it ; " and that " it was error to distribute such fund as the auditor found to be in the hands of the accountants to the small debts alone, the law making no preference in favor of small debts over large ones and all were entitled to participate in the fund." The opinion of the court upon the exceptions was brief, and it will appear more clearly how the decree in question came to be made, if we quote it in full. The court said : " The auditor properly held David Kunkle's notes to be his legacy under the will and took a wise and common sense view in his distribution in which it might have been better for parties to have acquiesced. The exceptant, however, chooses to stand upon his legal right, and the distribution must be made according to settled legal rules. All the indebtedness must be provided for in the distribution and a calculation showing how much each legacy is to be abated in order to make up the necessary difference between the fund in hand and the indebtedness. This will exhibit how much is to be contributed by David in the shape of abatement out of his legacy, and how much out of the legacies payable by John L. in order to create adequate fund to pay all the indebtedness. The report is re-

ferred back to the auditor for the purpose of reforming his report according to suggestions given." Pursuant to this order the auditor filed a supplemental report, in which he set forth that the debts due by the estate to John L. Kunkle, a particular statement of which was attached to the report, amounted, with interest, to $2,992.22 on December 16, 1878. He divided this into eight equal parts of $374.02¾ each, and reported that each of the six legacies given the five daughters and the children of the deceased son should abate in that amount as of December 16, 1878. He further reported as follows : " If not then paid (that is the abated sum) to the said John L. Kunkle, the said sum will bear interest in favor of the said devisee, John L. Kunkle, from December 16, 1878, until paid." To provide for the balance of the indebtedness which was left after deducting the abatements of the six legacies above referred to, the auditor directed that David Kunkle should pay to J. L. Kunkle, the devisee and creditor, $374.02¾ with interest from December 16, 1878, and that the latter should suffer an abatement of a like sum. The report was filed and confirmed nisi on December 16, and confirmed absolutely on December 24, 1878.

The validity of the decree is attacked by the appellant upon the ground, amongst others, that she never received any notice of any sitting of the auditor for any purpose, that she never employed any attorney to represent her before the auditor, that she never knew that an auditor's report had been made and confirmed until months afterwards, that she never knew her legacy had been abated, and that she never consented thereto. She contends that under the rules of the court below her ex parte affidavit alleging these facts must be taken as conclusive proof thereof. But this affidavit was not made until January 7, 1901, which was after the case had been first argued on petition and answer, and was not actually filed until March 25, 1902, which was after the case had been reargued and the final decree, from which this appeal was taken, had been entered, and, indeed, after the appeal had been taken. Granting, as stated in the order of March 25, 1902, directing the affidavit to be filed nunc pro tunc as of January 10, 1901, that it was " handed to the court January 10, 1901, without having been marked filed," the objection still remains that, under the rules of the orphans'

court to which our attention has been called, in order to entitle a supplemental petition or a replication to be received as conclusive proof of the facts therein alleged which are not denied by counter affidavit, it must be "duly filed of record in the case." Although the learned judge below does not refer to this matter in his opinion, it is evident from his findings upon the question of notice, that under his interpretation of the rule of court the affidavit was not "duly filed" at such time as made it incumbent upon the adverse party to file a counter affidavit. The circumstances under which the affidavit was "handed to the court," whether with the knowledge and understanding of the respondents or their counsel that it was to be treated as if "duly filed of record," are matters upon which the record furnishes us no information. Without such information it is impossible for us to convict the court of error in holding that the rule of court did not apply to this affidavit, and in disposing of the case upon the facts alleged in the petition and answer and the records therein referred to. It is well settled that, upon a question of the construction or application of its own rules, a court can be reversed only for manifest and material error: Bair v. Hubartt, 139 Pa. 96; Higgins Carpet Co. v. Latimer, 165 Pa. 617; Webster v. Monongahela Coal & Coke Co., 201 Pa. 278; Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290; Haines v. Young, 13 Pa. Superior Ct. 303, 310.

Turning then to the record of the original proceedings we find that the auditor was appointed on the motion of A. A. Stewart, Esq., that, according to the auditor's report, "pursuant to notice, the parties in interest as also counsel of the two executors," attended at the first hearing before the auditor, and that at that hearing "it was agreed that Mrs. Helman (the appellant) should receive $5.00, the price of two sheep of hers which testator sold;" that this sum was awarded her in the distribution reported by the auditor; that notices when the first report would be filed were mailed by the auditor "to all parties interested or their counsel;" that notices when the second report would be filed were mailed by him, ten days beforehand, to "all the parties interested and their counsel;" that A. A. Stewart, Esq., the attorney who moved the appointment of the auditor, filed exceptions to this report on behalf of "the legatees whose legacies are payable by John L.

Kunkle ; " and that, after re-examining the subject-matter of these exceptions, the auditor was of opinion, and so reported, that they had not been sustained and should be dismissed and the report confirmed.   It is true that the record does not show that a citation or rule to show cause was served on this appellant, and it may be conceded that the proceedings lack formality ; but we cannot agree with her counsel in the statement that she never had a day in court.   On the contrary, the prima facie presumption from the record is, not only that she had notice of the proceedings from the beginning to the end, and had an opportunity to be heard, but also that she was heard, through her counsel, upon the very subject-matter of the decree of which she now complains.

We come then to the question of the power of the orphans' court to make such a decree in the proceedings then before it. While the orphans' court has not the general jurisdiction of a court of equity, yet within the limited sphere of its jurisdiction, it is essentially such : " it proceeds on the same principles as a court of chancery " (Guier v. Kelly, 2 Binn. 299) ; " it applies the rules and principles of equity " (Willard's Appeal, 65 Pa. 265) ; and " has undoubtedly all the powers necessary to make its jurisdiction effective : " Ake's Appeal, 74 Pa. 116 ; Lowry's Appeal, 114 Pa. 219 ; Watt's Appeal, 158 Pa. 1. Speaking particularly of its jurisdiction to decree contribution between devisees and legatees, Chief Justice Gibson said : " The doubt is whether an orphans' court has power to marshal assets between legatees and devisees.   If it has not, no other court has it, and there is a gap in our system.   The power has not been specifically given ; but as a court of equity, with jurisdiction limited to particular subjects, that tribunal has all the powers necessary to give effect to its jurisdiction within the circuit of its action.   In giving general jurisdiction of a particular subject, the legislature impliedly gives every ancillary power necessary to the exercise of it : " Barklay's Estate, 10 Pa. 387.   See also Hallowell's Estate, 23 Pa. 223, and Armstrong's Appeal, 63 Pa. 312.   We need not cite other authorities upon this point.   Unquestionably the orphans' court has power to enforce the principles of the equitable doctrine of marshaling in the settlement of estates when the occasion requires it.   This is not denied ; but it is very earnestly argued

that in the exercise of the power in this particular case the court went beyond the limits of its jurisdiction, and, therefore, its decree is void.

Much stress is laid on the fact that there was no petition; indeed, it is broadly asserted that the jurisdiction of the orphans' court " must be based upon a petition, and that its jurisdiction must be ascertained from an inquiry into the facts therein set forth." This may be true where the statute makes a petition setting forth certain facts an essential prerequisite to the exercise of a power, as, for example, to order a sale for payment of debts. And it is not to be denied that the proceedings in this case would have been more regular if they had been based on a petition. But where the statute does not make the presentation of a formal petition an essential prerequisite to the exercise of a power, the omission thereof is not conclusive upon the question of jurisdiction raised in a collateral proceeding. In the case of Barklay's Estate, supra, after referring to the general jurisdiction of the orphans' court under the acts of 1832 and 1836, Chief Justice GIBSON said: " Both acts, however, require it to be exercised in the manner thereinafter provided; and in neither is there any specific provision for the marshaling of assets, except for apportionment among creditors of an insolvent estate, which is not marshaling in the legitimate sense of the word. But the grant of a power indispensable to the administration of justice is not to be defeated by an accidental omission to furnish the details. . . . . As it was impossible to foresee the cases that would fall within the generality of the grant, it was impossible to provide specifically for the manner in which they were to be disposed of; and it was left to the practice of courts of equity, or such practice as the orphans' court should adopt." It is thus seen that the objection under consideration goes to the regularity of the proceedings and not to the jurisdiction of the court.

It is urged further, that the exercise of this power in the present case was not invoked by any one, neither by the legatees, nor by the devisee, nor by the executors, and therefore, even conceding the general power of the orphans' court, its jurisdiction in this case was confined to the distribution of the money in the hands of the executors. True, there was no formal petition, but it is not accurate to say that the court volunteered to exercise a power that was not invoked by any

person having a right to do so.   Recurring to the proceedings heretofore recited, it is seen that the devisee and creditor objected to the first report because the abatements had not been made, and the matter was referred back to the auditor for this purpose.   The scope of his duties, whatever may be said of them under the original appointment, was thereby enlarged so as to include the very matter which was the subject of the decree; and if the record is to be credited, all parties interested were heard, or were given an opportunity to be heard, the legatees being represented by the attorney who procured the appointment of the auditor.   The decree was just and equitable.   It secured immediate payment of the small claims, including that of the appellant, and eventual payment of the debt due to the devisee, while at the same time compelling him to contribute proportionably with the legatees to that end.   Thereby the risk and expense of a sale of the land were avoided, and the full enjoyment thereof was secured to the widow for her life, as the testator intended it to be.   The decree stood unreversed, unappealed from and unquestioned for over twenty years.   If, as is now claimed, J. L. Kunkle has lost his debt, it is because he relied too implicitly upon the decree.   The learned judge below was fully warranted in saying that the equities are all with him.   But apart from the hardship that would result from holding that he ought to have known better than to put faith in the decree, we are of opinion, that, whether reversible on appeal for irregularities in the procedure or not—a question we are not called upon to discuss— it was not void for want of jurisdiction of the parties or the subject-matter.

Knecht's Appeal, 71 Pa. 333, is cited as authority for the proposition that, even if the legacy must be abated, the devisee is not entitled to retain interest on the amount of the abatement.   But in that case the question was raised in the original proceeding.   Here it was adjudicated in the decree of 1878, and, even if erroneously adjudicated, is not open to reinvestigation in this collateral proceeding.   Moreover, the cases are plainly distinguishable in another very important particular: In the case cited the devisee, who as executor had paid the debts of the estate—the personal assets being insufficient for that purpose—went into immediate possession of the land, and

it was held that "the possession and usufruct of the land thus retained were in law the equivalent of the interest on the debts." In this case the devisee had no right to the possession, and presumably did not obtain possession, until after the death of the widow. During this time it was just that he should have interest on his debt, and so the decree provided. When, however, the life estate was terminated and the devisee came into full possession of the land, the principle recognized in Knecht's Appeal became applicable, unless its application was prevented by the decree of 1878. As already said, we have no power to correct that decree, even if erroneous ; but we have the power to determine what it means. At first glance there seems to be a discrepancy between the language of the auditor's report and the language of the schedule attached thereto, as to the time to which interest on the abatements of the legacies charged on the land was to be computed. The language of the former is, "until paid," that is, until the abatements should be paid to J. L. Kunkle, while the language of the latter is, "until the respective legacies are due and payable under the will of decedent." Notwithstanding the seeming discrepancy, the report and the schedule may be harmonized and the evident intent of the decree effectuated, without rejecting either of the above quoted expressions. Construing them together, the abatements were made to bear interest until the legacies should become due and payable under the terms of the will, unless they, that is the abatements, should be paid in the mean time. When the obligation imposed on the legatee was discharged, as it was when the devisee came into full possession of the land and obtained the full benefit of the abatement, the latter was "paid" within the true intent and meaning of the decree. We are thus enabled to reach a just result without impeaching the decree of 1878 or denying its conclusive effect. Whether in making the present decree the court entertained the views we have expressed upon this last question, we are unable to say. The court simply ordered the respondents to pay the sum awarded the appellant in the proceedings of 1878, thus carrying forward into the decree appealed from the uncertainty as to the meaning and effect of the former decree upon the question of interest. To remove this and prevent further dispute the decree should be amended. Further, instead of dismissing the prayer of

the petition, the petition should have been granted and recovery of the petitioner's legacy decreed subject to the abatement allowed in the decree of 1878. Upon the main question we are in accord with the court below.

The decree is amended by striking out the words "prayer of petition dismissed at costs of petitioner;" and it is further ordered, adjudged and decreed that interest on the amount of the abatement of the petitioner's legacy, namely, $374.02¾ be computed at the legal rate from December 16, 1878, to April 7, 1894, the date of the death of the widow and life tenant; that said abatement with interest thereon thus computed be deducted from the petitioner's legacy of $1,000 due and payable on April 7, 1899; and that the petitioner recover this balance together with interest thereon from the last mentioned date; which sum is hereby declared to be a charge on the land described in the petition and now payable out of the same. As thus amended the decree is affirmed, and the record is remitted to the orphans' court with instructions to carry it into effect, and to that end, to make such further orders and issue such process as may be necessary. It is further ordered that one half of the costs of the appeal be paid by the appellant, and one half by the appellees.