# Deaven's Estate.

*Trusts and trustees—Security—Orphans' court—Jurisdiction.*

Where a testamentary trustee petitions the orphans' court for an order to compel the executor of the will under which the trust was created to pay over the trust fund to him, the court may, upon finding that the trustee is wholly insolvent, provide in the order that no money shall be paid to the trustee until after he shall have entered security.

Argued Oct. 22, 1906.   Appeal, No. 245, Oct. T., 1905, by William F. Nye, trustee of Moonshine church, from decree of O. C. Lebanon Co., June T., 1904, No. 1, directing payment of money in Estate of Peter Deaven, deceased.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Petition for an order to pay over money.   Before EHRGOOD, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the following order :
" And now, June 24, 1905, it is ordered and directed that if

the petitioner, W. F. Nye, enter in a recognizance in the sum of one thousand dollars with sufficient surety, to be approved by the court for the faithful performance of the duties of the trust, the said executor is ordered and directed to pay said trust fund to said petitioner. The costs of this proceeding to be paid out of the said fund."

*Paul G. Adams*, with him *Robert L. Adams* and *J. G. Adams*, for appellant.—The executor of Peter Deaven's estate had no interest whatever in the trust fund bequeathed to the trustee of the Moonshine church, and, therefore, had no standing in court to compel the trustee to answer as to his solvency or competency : Wheatly v. Badger, 7 Pa. 459 ; Gallagher's App., 89 Pa. 29 ; Craig's App., 38 Pa. 330 ; Gumbert's App., 110 Pa. 496 ; McGirr v. Aaron, 1 P. & W. 49 ; Price v. Maxwell, 28 Pa. 23 ; Domestic and Foreign Missionary Society's App., 30 Pa. 425 ; Evangelical Assn's App., 35 Pa. 316 ; Yard's Appeal, 64 Pa. 95.

This was not a proceeding instituted under the Act of May 1, 1861, P. L. 680, for the purpose of requiring security or removing the trustee, and, therefore, nothing could be inquired into or done in this proceeding touching or concerning the solvency or competency of the trustee . Chew v. Rawle, 2 Phila. 282; Hano's Est., 8 Pa. Dist. Rep. 353 ; Mason's Est., 12 Pa. Dist. Rep. 717.

*H. Rank Bickel*, for appellee, cited : McDowell's Estate, 10 Pa. Dist. Rep. 223.

OPINION by HEAD, J., December 14, 1906.

The record in this case shows that Peter Deaven, late of Lebanon county, died in 1903, having first made his last will in which he provided, inter alia, as follows :

" I give and bequeath unto the trustees of Moonshine Church in Union Township, Lebanon County, Pa., the sum of $500.00 and I direct that the same shall be securely invested and the interest thereof applied towards keeping said cemetery and the graves in a neat condition."

The testator had previously provided that his body should be buried in the cemetery named in the foregoing bequest.

The record further shows that this cemetery " is composed of the same land which Henry Moonshine, in and by his last will and testament, dated May 13, 1831, donated to the public, generally, for burial purposes, under provision as follows, viz: 'I, the subscriber, have given one acre of ground on my land for a graveyard or burying place for the deceased people which shall be free for the public to bury their dead persons.' " Manifestly this devise vested no title or property right to the cemetery in Moonshine Church or any congregation worshiping there. It was, as its terms declare, a gift to the public of a burying ground in which any citizen of that community might claim the right of free sepulture: Kitchen v. Wilkinson, 26 Pa. Superior Ct. 75.

The learned court below therefore reached the conclusion, not here complained of as we understand it, that " the bequest in the will of the testator (Peter Deaven) is not to the Moonshine Church nor for its benefit." In other words, the language of the bequest " unto the trustees of Moonshine Church " was merely descriptive of the person or persons who were to execute the trust for the benefit of all those who had then acquired, or might thereafter acquire, an interest in " keeping said cemetery and the graves in a neat condition."

In due time the executor settled his account, showing a considerable balance in his hands, and an auditor was appointed to make distribution. He filed his report on July 25, 1904, which was confirmed nisi and, no exceptions thereto having been filed, the decree of confirmation became absolute in due course on August 4, 1904. In this report the sum of $500 was awarded, in pursuance of the bequest already quoted, " to the trustee or trustees of Moonshine Church." There was no finding fixing the number of such trustees or identifying the person or persons to whom the money was to be paid.

Thus matters remained until October 3, 1904, when the present appellant, William F. Nye, filed his petition in the orphans' court, setting forth the bequest under the will of Peter Deaven, the award made by the report of the auditor and the confirmation thereof; averring that he was the duly elected and sole trustee of Moonshine Church entitled to receive said fund and asking for a citation to the executor or rule on him to show cause why the legacy should not be paid over. The executor,

thus brought into court by adversary process, answered that he had no knowledge that petitioner was, as he claimed to be, the person entitled to receive the fund; that demand had been made on him by two other persons, each claiming to be the trustee of Moonshine Church; that the petitioner was totally insolvent; that he, the respondent, had the money in his hands and was ready to pay it over to such person as the court might, by its order, direct. After a hearing and ascertaining of the facts the court determined that the petitioner was the trustee of Moonshine Church and consequently the person named by description in the will of the testator. Here, then, was a proceeding where the court undoubtedly had jurisdiction both of the parties and the fund and that jurisdiction was invoked by and grounded on the petition of a party in interest, viz.: the appellant himself. What powers then did the orphans' court possess that could properly be exercised in such a proceeding to determine whether or not the petitioner should have the decree he prayed for?

In Johnson's Appeal, 114 Pa. 132, the orphans' court is said to be " a court which, in its limited sphere, is a court of equity powers, and in all matters within its jurisdiction has as full authority to grant relief as any chancellor ever had."

" The orphans' court has jurisdiction to determine all questions necessary to a proper disposal of matters as to which jurisdiction has been expressly conferred:" Lowry's Appeal, 114 Pa. 219.

In Appeal of Miskimins, 114 Pa. 530, Mr. Justice TRUNKEY, speaking of the powers of the orphans' court, says: " It is often, though not properly, named a court of equity; and upon principles in equity may dispose of every question that arises in the determination of matters within its jurisdiction."

Here, then, was a court invested with the power and enjoined with the duty of disposing of every question that would properly enter into the determination of the propriety of granting the prayer of the petitioner. Its jurisdiction, as we have seen, had been invoked by a party in interest, and its powers were ripe for exercise if the disposition of the question before it upon equitable principles demanded that they be brought into action. The learned court below having found that the trustee petitioner was totally insolvent, this fact not being con-

tested, made an order directing that the fund should be paid over to him only upon his giving security "for the faithful performance of the duties of the trust," and from that order this appeal is taken. It is argued that the court was powerless, in the present proceeding, to do anything but turn the money over to the appellant without conditions, even though the very existence of the trust might be gravely imperiled thereby. At the same time it is freely conceded that, under the Act of May 1, 1861, P. L. 680, the same court would have had ample power, in the next moment, on the petition of any party in interest, to have summoned the trustee and made the very order now complained of. But wherein is the reason or necessity for such circuity of action? It is a familiar principle in equity that when a chancellor has once acquired jurisdiction of the parties and subject-matter his decree will not always be confined to the specific relief prayed for in the bill, but, for the very purpose of avoiding multiplicity of actions, may extend to the disposition of every question necessary to finally end the controversy. We cannot think, therefore, that the order of the court below, made for the manifest purpose of protecting the trust fund and securing its benefits to those who were the real objects of the testator's bounty, was even an irregular exercise of a power with which it was invested by the statute.

But even if the proceeding were not strictly according to the mode recognized by good practice, where a court is asked to make such an order as the one appealed from, what is the duty of an appellate court in a case like the one now before us? The second section of the Act of June 16, 1836, P. L. 682, provides: "It shall be the duty of the Supreme Court of this commonwealth, in all cases of appeal now made, or that may hereafter be taken from the decrees of the several orphans' courts, to hear, try and determine the merits of such cases, and to decree according to the justice and equity thereof."

In Van Dusen's Appeal, 102 Pa. 224, an executrix, having refused to obey an order of the court, was, on petition, summarily removed from her office without any citation or day in court. Upon appeal the decree was affirmed, MERCUR, C. J., giving the following reasons for the judgment: "It is true a citation should have been issued stating the specific object, and no removal should have been made without notice. The facts

averred in the petitions of the appellees, and in her answer thereto, exhibit such a dereliction of duty, and such a danger of loss to the estate as to clearly justify her removal after citation. The act of June 16, 1836, makes it our duty, in all cases of appeals from the several orphans' courts, to hear, try and determine the merits of such cases and to decree according to the justice and equity thereof. While the manner of removal in the present case is objectionable and should not be followed, yet in view of the command of the statute, and of the manifest justice and equity of the case, we do not feel that the decree should be reversed."

Following the broad path thus marked out for us we reach the conclusion that the decree complained of was just such a decree as a chancellor should and would have entered had the relief here prayed for been sought in a purely equitable proceeding; and such as this court, following the mandate of the statute and the spirit of the decision quoted, should itself have entered had it 'not already been done by the learned court below. The assignments of errror are therefore overruled.

Judgment affirmed.