## Bell's Appeal.　　Mussleman's Estate.

1. A testator ordered his land to be sold, but named no one to execute the power. The executor sold without authority from the Orphans' Court. *Held*, that the Orphans' Court had jurisdiction under the 12th sect. of Act of February 24th 1834, to compel specific performance by the vendee.

2. By the authority to *control and direct* sales under such powers in a will, the Orphans' Court has power to set aside or enforce a sale, as the court may deem will best serve the interests of the estate.

3. Specific execution enforced in this case against a vendee in favor of an executor not empowered by a will to sell.

May 16th 1872. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Cumberland county*: No. 28, to May Term 1872.

The proceeding in this case was for a decree for the specific performance by James D. Bell of a contract with John Mussleman, executor, &c., of Samuel Mussleman, deceased, for the purchase of the real estate of the decedent, ordered by his will to be sold.

A similar application had been made by the executor in the Common Pleas and a decree refused for want of jurisdiction; the decree of the Common Pleas was affirmed by the Supreme Court. The case is reported in 15 P. F. Smith 480, as Mussleman's Appeal.

The petition in Orphans' Court was by the executor, and was presented August 10th 1870.

The material facts are: The decedent died about the 31st of August 1868, leaving to survive him a widow Elizabeth, four children and two minor grandchildren, children of a deceased daughter, seised of a tract of land containing 138 acres. By his will he ordered his land to be sold, naming no one to execute the power of sale. The executor exposed the land to sale on the 17th of October 1868, without a previous order from the Orphans' Court. The conditions of sale stipulated that the purchaser should pay 10 per cent. of the purchase-money immediately, one-third to remain in the land for the widow during her life, half the remainder to be paid

April 1st 1869, when a deed was to be made; the other half to be paid April 1st 1870 with interest, and to be secured by a judgment; for the widow's share a mortgage was to be given to secure her the interest during life, and the principal to the legatees at her death; the land was "to be sold subject to the lease of the present tenant for the term of one year from the 1st day of April 1869;" the purchaser to sign an agreement to comply with the conditions. The land was struck down to James D. Bell, who, in writing, acknowledged the purchase at $209.50 per acre, and bound himself under seal "to comply fully with the conditions of sale;" he paid the hand-money, $2859.67.

The petition, besides the foregoing facts, set out, that in the latter part of October 1868, Bell, "with the assent of the parties in interest, took possession of the farm, changed the terms of the lease, cleared off an acre or more of timber land, cut valuable walnut trees, and exercised acts of complete ownership over said farm."

The petition further stated that the widow and heirs of the decedent ratify the sale, and are ready to execute any assurances necessary to vest the title in Bell; but that he refuses to complete the purchase.

"The petitioner therefore prays the court to approve and ratify the said sale of the said tract of land so made to the said James D. Bell, upon whom he prays a citation may be awarded for him the said James D. Bell, to show cause why the said sale should not be approved and ratified, and why your petitioner should not have specific performance thereof, and also that the court would grant your petitioner such other and further relief as to the court shall seem meet."

The widow and heirs by writing appended to the petition, assented to the statements of the petition and joined with executor in his prayer.

On the 10th of August 1870, a rule was granted "to show cause why the within-mentioned sale should not be approved and ratified, and citation awarded to James D. Bell to appear and show cause why the same should not be approved and ratified. Returnable on the 24th August inst."

By his answer Bell denied that he took possession, changed the terms of the lease, cleared timber or exercised acts of complete ownership, &c., and averred that he could not have taken possession because the tenant was in possession under his lease, which did not expire until April 1st 1870; that by permission of the executor, he had cut off about half an acre of woodland; and also without permission six or eight walnut trees, and upon notice from the executor "not to cut more until he got possession," he ceased; he removed a small quantity of the timber cut; the remainder was left on the ground; he made propositions to the tenant to change

the terms of the lease after he should go into possession, but the tenant declined and no change was made ; he exercised no acts of ownership over the farm except as above set out ; he averred that between the sale and the 1st of April 1869, when the deed was to be executed, he notified the executor several times that he would be ready to comply with the terms of the sale, and requested him to place the papers where defendant's counsel could make the necessary examinations ; but the executor did nothing till March 31st, when he submitted to defendant's counsel an unexecuted deed and other papers ; that he was ready to make the payment due April 1st 1869, and comply with all the conditions ; that the executor was not then and had not been since in a position to make a valid conveyance ; that on April 2d the executor tendered papers purporting to convey to the defendant the interests in the farm of the persons in interest, saying that they would convey to him a valid title, and that the papers had never been tendered before that day ; that the papers tendered were not sufficient to convey the title because the widow did not join, and there was no conveyance of the minors' shares ; that finding the executor could not convey a good title, he notified him on the 1st of April 1869, that the contract was rescinded, that he would bring suit to recover the hand-money paid, and that he had brought a suit for its recovery, which was then pending.

After a replication the case was referred to M. C. Herman, Esq., as auditor to report the facts and the evidence.

The auditor heard testimony bearing on the question of the defendant taking possession and the circumstances which occurred about April 1st 1869, in relation to the completion of the purchase.

Amongst other facts besides those set out in the answer, he reported that under the lease, the tenant was to burn lime and put it on the land at a price agreed on ; the tenant by the defendant's request was relieved until after the 1st of April from putting on the lime. The auditor, as the result of the evidence heard by him, reported that possession had never been taken or accepted by the defendant.

He further reported :—

" No deed of any description was tendered by the petitioner to the respondent at any time during that day, but he was willing to sign and acknowledge the unexecuted deed and deliver it. The respondent manifested a readiness and willingness to perform his part of the contract of sale, but announced his determination not to accept the title proposed to be conveyed by the unexecuted deed. The unexecuted deed left by Mr. Humerich with Mr. Hays remained in the possession of the latter until the 2d of April 1869, on which day Mr. Humerich came for it and took it away. This deed was signed and acknowledged by the petitioner on the 2d

day of April 1869, although both deed and acknowledgment are dated the 1st of April 1869."

He further reported that a release of their interest was executed by all the parties (including the widow) except the minors; and said:—

"The deed and release thus executed were tendered to the respondent on the 3d of April 1869, by the petitioner, and again on the 6th of April 1869, by C. P. Humerich, Esq., acting as petitioner's attorney, and both times refused by the respondent. * * * No other title-papers than the deed and release tendered on the 3d and 6th of April 1869, have ever been tendered to the respondent. Had they been accepted they would not have conveyed the entire estate of which the decedent died seised, and would not have vested such a title as the parties had in contemplation at the time of the sale and purchase." * * *

The auditor sent up all the testimony with his report.

On final hearing the court (Graham, P. J.) said:— * * *

·* * * "From the facts stated, if the sale can yet be ratified by the Orphans' Court, the plaintiff should not lose his money, and he should have specific performance. The widow's dower constitutes no objection, as she has released. Owing to Bell's own acts time was not of essence in the making of the title, and the doctrine of equity is, that when time is not of essence, a decree will be made against the purchaser, if the seller can make a good title at the time of the decree, unless there has been bad faith or an improper speculation attempted.

"The facts of the case as reported by the auditor clearly show the payment of $2859.67 as hand-money by James D. Bell, taking possession and exercising acts of ownership by negotiating with the tenant, subject to whose lease the land was purchased, as to changing the terms of the lease, changing the terms so far as to discharge the tenant from burning 1000 bushels of lime, clearing land and changing woodland into arable, cutting down and taking away large and valuable walnut trees, girdling others for the purpose of causing their death, directing tenant the kind of wood he was to cut for fuel on the farm under the terms of his lease, and other acts of ownership. These acts by Bell himself show that time was not of essence in the making of the title. Nor is there any evidence that after 1st April, when the contract was to be executed, Mussleman in any way interfered with, or attempted to control the tenant who occupied the land at the time of sale. On the contrary, from the date of sale to the 1st April following, Bell appears to have assumed the direction and supervision of the tenant, and from 1st April, when the parties failed to execute this contract, the same tenant remained on the land, neither party assuming or exercising the authority of landlord, and will doubtless

account for the rent and profits to the party entitled to the same, when the present controversy is ended.

"If time is not of essence in the making of the title in this case, we cannot avoid decreeing specific performance of the contract. Such was the opinion of the Supreme Court when this case was before them on the bill and demurrer, and when the evidence of possession alleged in the bill was no stronger than that reported by the auditor in the present case. Mr. Justice Agnew in his opinion before referred to says, 'I have been thus specific in stating the powers and jurisdiction of the Orphans' Court, because of the merits of this case, and our strong desire to sustain the bill in the Common Pleas.' And again he remarks, 'From the facts stated, if the sale can yet be ratified by the Orphans' Court, the plaintiff should not lose his remedy, and he should have specific performance.' The opinion of the Supreme Court concludes by affirming the decree of the Common Pleas sustaining the demurrer 'on the ground of want of jurisdiction; but without prejudice to the right of the appellant to proceed hereafter in due course of law to obtain confirmation of the sale made by him as executor of Samuel Mussleman, deceased, to James D. Bell, and to compel specific performance of the same by the said Bell.'"

The decree of the court was:—

"And now, 24th October 1871, the sale of the real estate of Samuel Mussleman made by John Mussleman his executor, to James D. Bell, as stated in the petition of the said executor, is approved and ratified. And upon the aforesaid executor executing a bond with security agreeably to law, to be approved by the court, in the penalty of $58,000; it is ordered that said executor execute and tender to the said James D. Bell a deed in fee simple for the aforesaid real estate, so as aforesaid sold by the said John Mussleman, executor as aforesaid, to the said James D. Bell. And upon the execution and tender of said deed, it is ordered and decreed that the said James D. Bell shall pay the said John Mussleman, executor as aforesaid, the balance of the purchase-money due and payable by the said James D. Bell, under the contract of sale, with interest from the time it became due and payable. And shall further execute a mortgage to said executor, on said real estate, conditioned to pay to the widow of Samuel Mussleman, deceased, annually, during her life, the interest on the one-third of the purchase-money from the 1st of April 1871; and to pay to her the accrued interest from the 1st of April 1869 to the 1st of April 1871, and the principal in full at the death of the widow."

Bell appealed to the Supreme Court, and assigned the decree for error.

*J. Hays* and *R. H. Henderson*, for appellant.—Time alone is sufficient bar to the aid of the court: Sugden on Vendors 589. A

clause in the contract providing for a forfeiture upon failure upon a certain day renders time of the essence : Wells *v.* Smith, 2 Edwards 78 ; s. c. 7 Paige 22 ; Scott *v.* Fields, 7 Ohio 908 ; Notson *v.* Barrett, 1 Iowa 302 ; Bodine *v.* Glading, 9 Harris 50 ; Mussleman's Appeal, 15 P. F. Smith 480.

Cutting timber might be compensated : Sugden on Vendors 384 ; Magennis *v.* Fallon, 2 Moll. 588. Here was but a license : Hilliard on Vendors 124, 128.

Where the party who applies for a specific performance, has omitted to execute his part of the contract by the time appointed, without sufficient justification or excuse, and there is nothing in the conduct of the other party, that amounts to an acquiescence, the court will not compel specific performance : Rogers *v.* Saunders, 16 Maine 92 ; Benedict *v.* Lynch, 1 Johns. Ch. 375 ; Garnett *v.* Macon, 6 Cal. 308 ; Goodwin *v.* Lyon, 4 Porter Eq. 297 ; Hays *v.* Hall, Id. 374 ; Scott *v.* Fields, 8 Ohio 92 ; Wiswall *v.* McGown, 2 Barb. S. C. R. 270 ; Voorhees *v.* De Meyer, Id. 37 ; More *v.* Smedburg, 6 Paige 600 ; Reed *v.* Chambers, 6 Gill & Johnson 490.

The notice of rescission made when plaintiff was unable to comply, relieved the defendant : Hoggart *v.* Scott, 1 Rus. & Mylne 293 ; Tamlyn 500-4, and 4 Eng. Chan. Rep. 432.

The positions are :—

1. Time was of the essence.

2. The acts of Bell were not in acquiescence of the vendor's delay.

3. Bell had a right to rescind the contract on April 1st 1869, and did so.

4. The vendor's acts were contrary to equity, and he is not entitled to any assistance.

5. The vendor has been guilty of laches and neglect without offering any justification for it.

*W. M. Penrose* (with whom was *C. P. Humerich*), for appellee. —Bell not having tendered the deed, time was waived : Tiernan *v.* Roland, 3 Harris 439 ; Sugden on Vendors 221, 178. So Bell's exercising acts of ownership : Ward *v.* Jeffrey, 4 Price 294. If the contract is substantially executed, the form of execution is immaterial : Batten on Sp. Perf. *279, 122. Tender is never required when it would be a mere matter of form : Batten on Sp. Perf. *125 ; Heron *v.* Hoffner, 3 Rawle 400.

If either party is guilty of delay, a written notice by the other that he shall consider the contract at an end if it be not completed within a reasonable time to be named, would be treated in equity as binding on the party to whom it is given ; but a reasonable time must be allowed : Sugden on Vendors 227 ; Batten on Sp. Perf. *126 ; Seton *v.* Slade, White & Tudor's Lead. Cas., vol. 2, pt. 2, p. *396 ; Tiernan *v.* Roland, 3 Harris 441.

Specific execution will be decreed, if the vendor is able to make a good title at any time before the decree is pronounced, except where a contract is made in bad faith by one who knows that he has neither title, nor the legal or equitable means of procuring one: Moss *v.* Hanson, 5 Harris 382; Ley *v.* Huber, 3 Watts 367; Cotton *v.* Wood, 3 Monro 313; Tyne *v.* Williams, 3 Bibb 366; Pierce *v.* Nickols, 1 Paige 244; Findley *v.* Lynch, 3 Bibb 566; Hepburn *v.* Dunlop, 1 Wheaton 179; Paton *v.* Rodgers, 6 Mad. 256; Coffin *v.* Cooper, 14 Vesey 205; Sugden on Vendors 222, 223.

The opinion of the court was delivered, July 3d 1872, by

AGNEW, J.—When this case was here on a former appeal the question of specific performance was not directly before us. It was then a bill in equity in the Common Pleas for specific performance of a sale of real estate made by the executor of Samuel Mussleman's will, under a power to sell real estate given by the will to no person by name or description. The executor had made the sale without any previous order or direction of the Orphans' Court, and we held that the supervisory jurisdiction of the Orphans' Court, under the 12th section of the Act of 24th February 1834, extended to the approval or ratification of the sale, and that the 57th section of the Act of 29th March 1832 supplied the means of calling the parties before the court for this purpose. It was therefore decided that the jurisdiction over the question of ratification being exclusively in the Orphans' Court, the Common Pleas had no jurisdiction to enforce the specific performance of the sale, which was inchoate without the approval of the Orphans' Court. That bill having been dismissed without prejudice, the executor presented his petition to the Orphans' Court, setting forth the sale, and praying for its approval and also for its specific execution, and obtained a decree from which the defendant has appealed.

As the question of specific performance was not directly decided before, it is proper we should now say that the Orphans' Court has jurisdiction of it. The 12th section of the Act of 1834 conferring the power of sale on the executor, declares that it shall not be exercised or carried into effect except under the control and direction of the Orphans' Court having jurisdiction of his accounts. This power to control and direct carries with it the power to affirm or disaffirm the sale, to set it aside or to enforce it, in the sound discretion of the court to serve the best interests of the estate. There are many reasons why that court should not only superintend the exercise of the power of sale in the first instance, but should also retain its jurisdiction to carry it into final effect. It is the proper court having general jurisdiction over the settlement of the accounts of the executors and the distribution of the proceeds of sale. It has also not only the special jurisdiction

[Bell's Appeal.]

given in the 12th section of the Act of 1834, but that also contained in the 19th section of the same act, which authorizes the purchaser to bring the money into court to protect himself against the debts of the testator; under which section it has been decided that the Orphans' Court has jurisdiction over the fund, and to adjudicate the rights of creditors and others: Tilghman's Estate, 5 Whart. 44; see also Cadbury *v.* Duval, 10 Barr 265, and 4 Casey 47. Other considerations flow from the various laws vesting in the Orphans' Court the power of removing executors and testamentary trustees, to order the execution of the proper deeds, and the securities to be given to the purchaser according to the terms of sale, and to order that the deed be made by survivors or administrators, with the will annexed, in the case of the resignation, death or removal of the executor making the sale. Besides, the Orphans' Court proceeds as a court of equity, and has ample powers to enforce all its decrees under the various articles of the 57th section of the Act of 1832 and the Act of 1846. There is entire fitness, therefore, in the proceeding to enforce the contract, being under the control of the Orphans' Court.

On the merits we discover no reason to disagree with the opinion of the Orphans' Court. The auditor evidently mistook the force and effect of the evidence on the question of possession. Under the terms of sale, actual possession was not to be delivered to the purchaser. He bought subject to the tenant's lease, which was not to expire until April 1st 1870, a year after the time when the sale was to be consummated. The evidence shows clearly that Bell, under his purchase, took the contract of the tenant and the farm, and, acting upon this right, he cut timber largely for himself, directed the tenant where and what firewood to cut, relieved the tenant from liming the farm extensively as he was bound to do under the lease; that the want of ability in the executor to make title by the day appointed, was a mere mistake of his authority as to the mode of executing the power of sale; that the defendant when he discovered this, suddenly notified the executor that he rescinded on the same day, without allowing any reasonable opportunity to correct the error, without paying or tendering payment for the damages he had done to the premises; and, in short, without evidencing any fair intention to repair the mischief he had done, or to place the executor *in statu quo,* as he was before the sale. He had paid also $2859.67 on the purchase-money. On the whole, we perceive no ground on which the defendant should be relieved from his purchase; and the decree of the Orphans' Court is

Affirmed with costs.