# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

Watts's Estate. Watts's Appeal.

158     1
21 SC ²206
158    1
f 36 SC ¹ 56

*Decedents' estates—Jurisdiction of orphans' court.*

A person who is both the attorney and surety of an administrator is amenable to the jurisdiction of the orphans' court, if he has possession of the property of the intestate, and a decree may be entered against him personally for the amount in his possession.

An attorney at law, who was both the attorney and the surety of an administrator, performed all the duties of the administration. When the administrator was cited to account, he alleged that the trust fund had not been received by him, but by his counsel. The attorney submitted himself to the jurisdiction, was represented before the auditor, and in his own testimony, while admitting the receipt of the money, alleged that he had paid it to the distributee by crediting it on the purchase money due from her to him on a house and lot. She admitted that part of the sum belonging to her had been thus applied, but averred that there was still a balance in his hands. The auditor so found, and a decree was entered against the attorney. After the death of the attorney the amount of the decree was claimed from his estate. *Held*, that the orphans' court had jurisdiction to enter the decree, and that the claim should be allowed.

Argued April 27, 1893. Appeal, No. 408, Jan. T., 1893, by Edward B. Watts, executor of Frederick Watts, deceased, from decree of O. C. Cumberland Co., sustaining exceptions to adjudication. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

VOL. CLVIII—1 (1)

Adjudication of executor's account.

The auditor, E. M. Biddle, Jr., Esq., reported as follows:

"In August, 1871, Mrs. Susan Gilmore, by her next friend, filed three petitions in the orphans' court praying for a citation against John C. Gilmore, as administrator respectively of Mary Cronon, Ellen Shea and Margaret Woods, deceased, commanding him to settle an account in each estate, or to show cause, etc., alleging inter alia that she was a sister and next of kin to the three decedents; that he had received money in each estate for which he had never accounted and to part of which she was entitled, and that Frederick Watts and Peter Spahr were the sureties on his bond as administrator in each estate. The citations prayed for were issued Aug. 28, 1871. On Oct. 23, 1871, John C. Gilmore filed an answer admitting that he was administrator in said three estates, and that he had never set tled accounts therein, averring that although money had been collected in each estate it had been received and retained by Frederick Watts, and that no part of it had ever come into his own hands. On Nov. 21, 1871, a general replication to this answer was filed by Mrs. Gilmore's attorney, and on Dec. 12, 1871, A. B. Sharpe, Esq., was appointed auditor in the several proceedings ' to hear the evidence and report the facts with his opinion.'

"In the hearings before the auditor, Mr. Sharpe, evidence was offered on behalf of Mrs. Gilmore to show the amount in said three estates received by Judge Watts in 1859, and retained by him on account of the unpaid purchase money of a house and lot purchased by her in 1848, and that said amount, in addition to payments made by her and credits claimed by her, was largely in excess of said unpaid purchase money, and that therefore there was in his hands a balance due her.

"Judge Watts testified that he had received in 1859 Mrs. Gilmore's share of her sisters' estates, and had appropriated it, with her knowledge, to the unpaid purchase money of the house bought by her in 1848. That the amount so received, together with the payments made by her was about $160 less than said unpaid purchase money, and that he had forgiven her the balance in consideration of her poverty.

"The auditor, Mr. Sharpe, in his report finds that the administration bonds of John C. Gilmore were signed by only one

surety, Frederick Watts; that Judge Watts should be charged with $113, with interest from 1853 (being two years' wages of her son, which amount Judge Watts should have credited on the purchase money of her house); that the amount received from the estates of Ellen Shea, Mary Cronon and Margaret Woods, while less than claimed by Mrs. Gilmore, was in excess of the sum which Judge Watts admitted he had received; and that on Sept. 5, 1863, the date on which Mrs. Gilmore stated she had made a final payment of $300 to Judge Watts, he had received from Mrs. Gilmore (including inter alia in this calculation the amount received from the three estates, the son's wages and the payment of $300 on said date) $330.10 in excess of the unpaid balance of the purchase money of the house and lot purchased in 1848. The auditor found, in conclusion, that this $330.10 amounted, with interest to March 5, 1874, to $538, and that after deducting the costs of audit there was in Judge Watts's hands, payable to Mrs. Gilmore, the sum of $450.

" To this report exceptions were filed by W. J. Shearer, Esq., on behalf of Mrs. Gilmore, because the costs of audit were charged against the sum found in Judge Watts's hands; and by John Hays, Esq., 'on behalf of exceptant,' because the sum of $538 was found in Judge Watts's hands. The report and exceptions were submitted to the court without argument, and the report was confirmed by the court without opinion filed. It is on the finding of the auditor, Mr. Sharpe, and the decree of the court thereon, that the claim of Mrs. Gilmore's executors is based.

" The administration bonds of John C. Gilmore being signed by only one surety are ipso facto void (4 Rawle, 382, 31 Pa. 522), and no liability on the part of Judge Watts's estate can be created thereby.

" The questions for the present auditor to decide are: are the former auditor's report and the decree of the court thereon admissible in evidence to show a liability on the part of Judge Watts's estate, and if admissible are they conclusive as to such liability? Your auditor thinks that both questions should be answered in the negative.

" The proceedings before Mr. Sharpe were against John C. Gilmore as administrator of various estates, and it is not open

to question that Judge Watts could have remained a stranger to them throughout had he so desired. 'It is entirely clear that a judge has no power to rule a stranger into court and compel him to answer:' Martin v. Gernandt, 19 Pa. 129. It is urged by the counsel for Mrs. Gilmore's executors, however, that Judge Watts voluntarily became a party to the proceedings and so is bound by the decree; he having appeared before the auditor personally and by counsel, and having excepted to the finding of the auditor. The evidence of Judge Watts's intention in this regard seems to your auditor very unsatisfactory. Mr. Sharpe in his report nowhere speaks of Judge Watts as a party to the proceedings. He is mentioned merely as a witness called on behalf of the respondent (John C. Gilmore). There is nothing to show that Judge Watts was ever personally present at any of the hearings before the auditor. His evidence is in the form of a deposition apparently signed Aug. 12, 1873, and sworn to before Mr. Sharpe, Oct. 14, 1873. As to his representation by counsel, the auditor states that notice of the time and place of the first meeting was given to ' R. M. Henderson, the counsel for Hon. F. Watts;' but it does not appear that Mr. Henderson attended that or any subsequent meeting. An exception to the auditor's report was presented by John Hays, Esq., 'attorney for exceptant,' and W. J. Shearer, Esq., attorney for Mrs. Gilmore, swears that Mr. Hays was concerned for Judge Watts. Mr. Hays, however, says that he has no recollection of ever appearing before the auditor.

" Under the term parties (says Mr. Greenleaf, in his Law of Evidence, § 524), 'the law includes all who were directly interested in the subject-matter, and had a right to make defence or to control the proceedings, and to appeal from the judgment. The right involves also the right to adduce testimony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are regarded as strangers to the cause.' Under this definition the position of Judge Watts seems to your auditor that of one who considered himself a stranger rather than a party to the proceedings before Mr. Sharpe.

" Had it been Judge Watts's intention, however, to become a party to the proceeding before Mr. Sharpe, it was not in his power to do so, or in that of the auditor to admit him as such.

The action was against John C. Gilmore to compel him to settle accounts in the three estates in which he was administrator, and in that Judge Watts had no direct interest whatever. The finding of the auditor that Judge Watts had received from Mrs. Gilmore a sum in excess of the purchase money of the house she bought in 1848 was, if correct, a decision on a point foreign to the question at issue, and one over which he had no jurisdiction. His report shows that the sum found in Judge Watts's hands is made up, not of the money received from the estates of Ellen Shea et al., in 1859; but of a credit of $113 in 1852 which Judge Watts had not allowed, and of $300 which Mrs. Gilmore paid to him in September, 1863. To give effect to the auditor's finding now would be to declare the orphans' court the forum for the settlement of accounts between parties in full life and acting in their individual capacities.

"In Kille v. Ege, 82 Pa. 102, the Supreme Court says: 'It is well settled that the estoppel of a judgment extends only to the question directly involved in the issue and not to any incidental or collateral matter, though it may have arisen or been passed upon.' Lewis & Nelson's Appeal, 67 Pa. 153, is to the same effect.

"In Martin v. Gernandt, supra, Justice GIBSON, approving and commenting on Fitzaldin v. Lee, 2 Dall. 205, says: 'Parties contesting the right to possession of land agreed to try the matter in a summary way in the common pleas, and to that end gave the proceeding the form of a plaint under the landlord and tenant act; but the judgment was reversed on error. Being coram non judice, because the common pleas has only appellate and restricted jurisdiction of such a case, it required no reversal; but the decision shows that it is not every informal submission of a fact to a court and jury which precludes subsequent inquiry into the truth of it.'"

The auditor therefore rejected the claim. Exceptions to the report, alleging that the auditor erred in not holding that F. Watts was a party and in disallowing the claim, were sustained by the court in the following opinion by SADLER, P. J.:

"To John C. Gilmore, on the 25th of August, 1856, were granted letters of administration upon the estates of Mary Cronon, Ellen Shea and Margaret Woods, by the register of this (Cumberland) county. Upon his bond there was but one

surety, the Hon. Frederick Watts. The estates of said decedents consisted solely of moneys which had been bequeathed to them by their deceased father, Henry Woods, late of Dauphin county, and which were still in the hands of the executor of the latter.

" Judge Watts acted as attorney for Mr. Gilmore, the administrator, and as such, through James McCormick, of Harrisburg, collected the moneys owing to estates of the said Mary Cronon, Ellen Shea and Margaret Woods. This was in the year 1859. Fifteen years having elapsed after the taking out of letters of administration by Gilmore, a citation was, on the 28th day of August, 1871, awarded, upon the petition of Susan Gilmore, a sister of the decedents, and interested in their estate as next of kin, commanding him to exhibit an account of her trust.

" The administrator made answer that the 'estates had in part been recovered by adverse proceedings in Dauphin county, but that the same had been received by Hon. F. Watts, and no portion had been paid by the latter to him.' After replication to this answer, to wit, on Dec. 12, 1871, A. B. Sharpe, Esq., was appointed auditor in the several proceedings, 'to hear the evidence and report the facts with his opinion.'

" According to his report he 'fixed a day to meet the parties, and of the time and place of meeting gave notice to Wm. Penrose, counsel for the petitioner, and to R. M. Henderson, as counsel of Hon. F. Watts.'

" A number of depositions were made before the auditor, including that of Judge Watts. The latter, as appears by his said deposition, received the money belonging to the estates of which John C. Gilmore was the administrator, his recollection differing, however, somewhat as to the amount received, from what appeared by other evidence before the auditor. He stated that while the fund had not been paid over to Gilmore it was because in the year 1848 he had sold a house and lot to him (Gilmore) for $900—of which the latter paid $200 in cash and gave for the remainder of the purchase money seven bonds of one hundred dollars each, payable annually, and that on the 2d day of May, 1848, he, 'Gilmore, transferred their interest in Henry Woods's estate as collateral security for said bonds.'

" He made the deed 'to Susan Gilmore, wife of the said John C. Gilmore, because her interest in her father's estate had paid

most of the purchase money.'   He further stated that ' when
her interest in her father's estate was appropriated there was
still a balance of the purchase money due of about $160.'

" The auditor, however, found that there had been payments
made by Mrs. Gilmore in cash and otherwise greater in amount
than Judge Watts had a recollection of, and that, conceding his
right to appropriate out of the money which he had received
as attorney for the administrator sufficient to pay the balance
due on the purchase money in his hands, there still remained
a considerable portion of the trust funds.   This amount, after
making an allowance to Mr. Watts of $87.95,. or ten per cent
on the amount he had received from McCormick, and also de-
ducting $25.00 for possible costs of administration, the auditor
fixed at $330.10, which, with interest to 5th of March, 1874,
time of making his report, aggregated $538.

" From this the auditor deducted the costs of the proceedings
in the citation and those of the audit, making the amount pay-
able to Mrs. Gilmore $450.   This report was filed 23d March,
1874, and confirmed nisi.

" On the 30th of the same month, on behalf of Mrs. Gilmore,
the report was excepted to ' because the auditor had appropri-
ated any part of the money to the payment of the house;
because he had deducted from the fund the expenses of the
proceedings, including the auditor's fee, and because the audi-
tor had not found and reported in the hands of Judge Watts
the whole amount received by him from Mr. McCormick, with
interest from its receipt as due and payable by Mr. Watts to
him, Gilmore.'

" An exception had also been filed on the 25th day of the
same month, stating ' that the auditor erred in finding and re-
porting the sum of $538 in the hands of Hon. F. Watts.'   This
was signed ' Henderson & Hays, attorneys for exceptant.'

" Subsequently the following entry appears on the back of
the report: ' And now, to wit, 8th May, 1875, this report of
auditor having been submitted by consent on the exceptions,
without argument, and the same having been duly considered
by the court the exceptions are overruled and the report con-
firmed.   BY THE COURT.'

" Frederick Watts died on the 17th day of August, 1889.
An auditor was appointed to distribute the balance in the hands

of the executor.   The executors of Mrs. Gilmore, now deceased, presented a claim for the amount found to be due her by the report of Mr. Sharpe.

" In support of the claim were offered the administration bond signed by himself and Frederick Watts, and the report of A. B. Sharpe, Esq., and testimony to show that Judge Watts was represented before the auditor by counsel, and that exceptions had been filed in his behalf.   The deposition of Mr. Watts and the decree of the orphans' court confirming the report of the auditor were also relied upon to fix the liability of him, Judge Watts.

" The auditor found that Judge Watts was not a party to the proceedings before the auditor, and that even had it been his intention to do so, ' it was not in his power to become a party or in that of the auditor to admit him as such.'

" He concluded that the decree of the orphans' court that F. Watts had $450 in his hands payable to Mrs. Gilmore as next of kin of her sisters was not conclusive upon him as to such liability, nor even admissible in evidence for that purpose.   In his opinion the matter was not within the jurisdiction of the orphans' court.

" Had the orphans' court jurisdiction?   That ' the orphans' court has exclusive authority to ascertain the amount of a decedent's property and order its distribution among those entitled to it,' has long since been accepted as well settled.

" Indeed the value of an estate must be determined in that court before an heir or distributee can compel the payment of the share to which he is entitled.   Mrs. Gilmore therefore proceeded properly in applying to the orphans' court to compel the administrator of Mary Cronon, Ellen Shea and Margaret Woods to exhibit an account of his trust.

" Now, what relation did Frederick Watts bear to the trust? He signed the administrator's bond of J. C. Gilmore.   All the assets of three estates came into his hands.   The administrator in his answer to the citation so avers.   This was admitted by Judge Watts in the deposition made before the auditor. He stood before the auditor as a surety of the administrator and as one having received the entire trust fund.

" In Brooke's Appeal, 102 Pa. 150, it was held that the orphans' court might properly award a citation upon the surety

of a guardian, who had the property of minor children in his possession, under an arrangement with the guardian, to surrender the same or its proceeds and to make an order and decree that the same be done. In this it was the guardian who instituted the proceedings and not the cestui que trust.

" It was held in Appeal of Odd Fellows' Saving Bank, 123 Pa., 356, that it was proper to apply to the orphans' court to compel the executors of an estate to commence proper legal proceedings for the recovery of certain shares of stock which had been improperly assigned by one of the executors to a savings bank, and that the court could compel the bank to restore the stock.

" It was held that ' the court had jurisdiction over the property for the reason that it belonged to the estate of a decedent.' That to grant the relief prayed for was a proper exercise of the chancery powers conferred upon the orphans' court. Equitable jurisdiction having attached, it was sufficient to embrace every relief necessary for a full disposition of the case, and that there was, therefore, no need to call in the aid of a court of law. The bank having interfered willfully with the orphans' court's possession of the assets of the estate, in violation of the trust under which they were held, must make restoration. Jurisdiction of the person who happens to be in possession of trust property follows necessarily when the fact is established that he has become its custodian.

" But it was contended in the argument of this case that Hon. F. Watts had not been made party to the proceedings before the orphans' court, nor had he, in fact, become a party. It is true that the citation was not directed to him. But did he not become a party? It was not pretended before the auditor that Gilmore had received any portion of the estates into his hands. The whole question was, how much had been received by Mr. Watts, and how much was he entitled to apply to payment of the purchase money owing to him for the house bought in 1848. The auditor states that notice was given to R. M. Henderson, as counsel for him. Judge Watts made a deposition before the auditor setting forth that the money had been received by him and accounting for the disposition of it. A statement of his account with Mrs. Gilmore was submitted to the auditor. Surely he was cognizant of the fact that the ques-

tion before the auditor was, how much, if any, of the trust funds were in his hands.   There is nothing to indicate that he appeared merely as a witness for Gilmore.   Nothing in the proceedings before the auditor to indicate that his right to inquire into the manner in which Judge Watts had disposed of the trust fund was objected to or even questioned.   Exceptions were filed by Mr. Hays, signing thereto the firm name of Henderson & Hays, of which he was a member.   It appears that during the period that the matter was pending before the auditor this firm was composed of R. M. Henderson and himself, Mr. Hays.   While Mr. Hays has no recollection of having been before the auditor, nor as to the person for whom the exception was filed except what appears from the paper, he is sure that he ' was not employed for Mr. Gilmore and could not have been employed against Judge Watts.'   The exception complains of the finding against Hon. F. Watts, and no one would have been interested in filing the same except Mr. Watts and Mr. Gilmore, the administrator.   The latter would hardly complain of a finding that supported the averments in his answer. Besides, Mr. Shearer, who was attorney for Mrs. Gilmore after Mr. Penrose had ceased to act for her, is certain that Mr. Hays was concerned for Judge Watts.

" Again, Judge Watts permitted the finding of the auditor and decree of the court to stand against him unappealed from for more than fourteen years.   It is extremely improbable that he would have permitted this decree to remain unquestioned if he himself had not acquiesced in it, and this is especially so when it is remembered that he was a lawyer of exceptional ability and quick to realize the peril he would be put in unless he, in some manner, manifested his dissatisfaction with the action of the orphans' court.

" It was suggested at the hearing before us on the exceptions to the auditor's report that the matters charged against Mr. Watts by the auditor were not trust funds, but wages of her son and liabilities of other kinds incurred in dealing with her, Mrs. Gilmore.   This view is not supported by the facts as they appear from the proceedings before the auditor.   J. C. Gilmore became indebted in judgments by reason of the purchase of a house and lot in 1848.   On May 2d of that year he assigned the interest of himself and wife in the estate of Henry Woods.

As a matter of course this assignment did not bind Mrs. Gilmore, as the act of April 11, 1848, had already been approved, nor did it purport to be of her interests in the estates of Mary Cronon, Ellen Shea and Margaret Woods, over which the subsequent contention arose. But, conceding that the assignment was held with her assent, it was only as collateral for the payment of the bonds. If paid in full the right of Judge Watts to any portion of the estate of Henry Woods ceased. If paid in part he could, in no event, apply more of the trust estate which came into his hands than would be sufficient to pay the balance due him on the purchase money. Now, the orphans' court has jurisdiction over trust funds, and it has determined, and the decree has not been appealed from, that of these trust funds belonging to the estates of the three above named decedents, the sum of $330.10 was remaining in the hands of Judge Watts, which, with interest to March 5, 1874, amounted to $538.

" Our determination is, therefore, that the orphans' court had jurisdiction. That Judge Watts became a party to the proceedings which terminated in the decree of May 8, 1875, and that as this was unappealed from it is conclusive, and that his estate is liable to pay the same. This is not an action on the bond given by the administrator to enforce payment by the surety, so that it is not necessary to determine what, under the circumstances of this case, the liability of Judge Watts would have been had a proceeding been instituted to recover upon it, the said bond."

*Errors assigned* were (1–4) in sustaining the exceptions, and in entering the decree, quoting them.

*E. W. Biddle* and *Edward B. Watts*, for appellant, relied upon the auditor's report.

*A. D. B. Smead* and *Wm. Trickett, John B. Landis* with them, for appellee, cited: Dundas's Ap., 73 Pa. 474; McGettrick's Ap., 98 Pa. 9; Grove's Ap., 103 Pa. 562; Thompson's Ap., 103 Pa. 603; Phillips's Adm'r v. Allegheny Valley R. R., 107 Pa. 465; Otterson v. Gallagher, 88 Pa. 355; Lex's Ap., 97 Pa. 289; Brooke's Ap., 102 Pa. 150; Odd Fellows Savings Bank's

Ap., 123 Pa. 356 ; Second National Bank's Ap., 138 Pa. 285 ; Holliday v. Ward, 19 Pa. 485 ; Hughes's Ap., 57 Pa. 179 ; Axtell's Ap.. 43 Leg. Int. 476 ; Yohe v. Barnet's Adm'r, 1 Bin. 358 ; Wimmer's Ap., 1 Whart. 95 ; Barklay's Est., 10 Pa. 387 ; Kittera's Est., 17 Pa. 416 ; Whiteside v. Whiteside, 20 Pa. 473 ; Shollenberger's Ap., 21 Pa. 337 ; McGowin v. Remington, 12 Pa. 56 ; Black's Ex'r v. Black's Ex'rs, 34 Pa. 354 ; Winton's Ap., 97 Pa. 385 ; Mussleman's Ap., 65 Pa. 480 ; Dundas's Ap., 73 Pa. 474 ; Otterson v. Gallagher, 88 Pa. 355 ; Williamson's Ap., 94 Pa. 231 ; Phillips's Adm'r v. Allegheny Valley R. R., 107 Pa. 465 ; Second National Bank's Ap., 138 Pa. 285 ; McGowin v. Remington, 12 Pa. 56 ; Rice's Ap., 79 Pa. 168 ; Change of Grade in Plan 166, 143 Pa. 430 ; Peebles's Ap., 15 S. & R. 39 ; Zeigler v. Sprenkle, 7 W. & S. 175 ; Downer v. Downer, 9 Pa. 302 ; Witman and Geisinger's Ap., 28 Pa. 376 ; Foster v. Com., 35 Pa. 148 ; Shalter and Ebling's Ap., 43 Pa. 83 ; Ogden v. Phila., 143 Pa. 430.

OPINION BY MR. JUSTICE DEAN, October 30, 1893 :

The facts are so clearly and concisely stated by the learned judge of the orphans' court that repetition of them is unnecessary.

The assignments of error, though four in number, are one in substance. They deny the jurisdiction of the orphans' court in 1875 to adjudicate the balance of $538 against the decedent, in the proceedings against John C. Gilmore, administrator.

We are of the opinion that the court had jurisdiction. It was clearly shown that this balance of the fund was in Judge Watts's hands ; that while Gilmore was nominally administrator, Judge Watts, in fact, performed all the duties of the office ; that he was both attorney and surety for the administrator. When Gilmore was cited to account, and alleged the trust fund had not been received by him, but by his counsel, Judge Watts submitted himself to the jurisdiction, was represented before the auditor by counsel, and in his own testimony, while admitting the receipt of the money, alleged he had paid it to Mrs. Gilmore by crediting it on the purchase money due from her to him on a house and lot. She admitted that part of the sum belonging to her had been thus applied, but averred there was still a balance in his hands of $330.10, which, with interest added,

made the whole balance $538, the amount claimed before the auditor. The auditor, after full hearing, so found, his report was confirmed by the court, and no appeal taken. This litigation was in 1875 and the years immediately preceding. All the parties were then living; all are since dead. Although Judge Watts survived until 1889, this decree against him remained undisturbed.

The jurisdiction, both over the subject and the person, is denied. The orphans' court would not have had jurisdiction to settle the individual accounts between Judge Watts and Mrs. Gilmore on the purchase of the house and lot; but that was not the subject of which it took jurisdiction. It had jurisdiction over the estate of which John C. Gilmore was administrator; it was its duty to lay its hands on the assets of this estate and turn them over to those entitled to receive them. The administrator who ought to have had the money alleged Judge Watts had it; he admitted he once did have it, but alleged he had paid it to Mrs. Gilmore, the party entitled to it. The orphans' court then undertook to determine whether any part of it was still in his possession, and found there was $330.10 of the $879.56 he had collected still in his hands. Incidentally this involved an inquiry as to how much of the money had been credited to Mrs. Gilmore on the house she had bought from him; but this was not the purpose of the inquiry; its sole purpose was the ascertainment of how much of the money of the estate he still had.

While the jurisdiction of the orphans' court is restricted to particular subjects, the estates of decedents and minors, its powers necessary to the exercise of this jurisdiction are not restricted; within its domain, they are as unlimited as those of a court of chancery: Barklay's Estate, 10 Pa. 390; Kittera's Estate, 17 Pa. 423. Over these subjects the jurisdiction is exclusive, and therefore as extensive as the demands of justice: Shollenberger's Appeal, 21 Pa. 341; Bell's Appeal, 71 Pa. 465. And all persons are amenable to the jurisdiction who have possession of the trust property: Brooke's Appeal, 102 Pa. 150; Odd Fellows Savings Bank's Appeal, 123 Pa. 356. In this last case cited, the bank had no further connection with the estate in process of administration than having in its possession 133 shares of Allegheny Gas Stock, illegally assigned

to it by one of the executors. The bank demurred, averring the subject-matter of litigation was not within the jurisdiction of the orphans' court; that court overruled the demurrer, and this court on appeal affirmed the decree, holding that " the power of the orphans' court is only limited by the necessities of the case, and by its duty to administer equity in accordance with established rules. In such case, it needs no other court to finish its work." In that case, the bank claimed the stock as its own, by a regular transfer for a valuable consideration. Here Judge Watts did not claim the money, but only alleged he had already paid it to Mrs. Gilmore. The fact in dispute was determined against him by the orphans' court. That is the end of the matter.

The decree is affirmed and appeal dismissed at costs of appellant.

MR. JUSTICE MITCHELL, dissenting:

In 1871 Gilmore as administrator of Woods and others was cited to account, and an auditor was appointed to hear the evidence and report. In 1874 the auditor filed a report in which he charged Hon. Frederick Watts with the balance which he found due from the accountant. In what capacity Judge Watts was thus charged, the record may be searched in vain to discover. He was not administrator, for the letters were issued to Gilmore and he it was who was cited and brought into court to account; he was not administrator de son tort, for whatever he did in regard to the estate was done as attorney for Gilmore the legal accountant; if he could be regarded as a debtor to the estate by reason of the receipt of its money, then he was an alleged debtor who disputed owing any debt, and the orphans' court was not the tribunal to settle that dispute, even if it brought him before it by any recognized process, which it admittedly did not.

The account is a hotchpotch of purchase money for a house due by Mrs. Gilmore, wages due to her son James, money received by Judge Watts as attorney for Gilmore in three separate estates, and some of it paid out to the heirs of Catharine Kerby, all jumbled together in a manner that might possibly be pardoned to a country squire, but can hardly be excused in a member of the able and learned bar of Cumberland. Yet on

this report the orphans' court made a decree, and eighteen years later, after Judge Watts was dead, this decree was presented as a claim against his estate. These are the undisputed jurisdictional facts which no gloss can change, no intermixture of irrelevant matters can obscure, nor any discussion of conflicting evidence shake the force of. Into such discussion it is not worth while to enter. All that need be said is well stated by the learned auditor in the present case, and for the reasons presented by him I am of opinion that the decree of the orphans' court in 1875 so far as it related to Judge Watts was without jurisdiction of either person or subject-matter, and was absolutely void.

MR. JUSTICE THOMPSON concurred in the dissent.