## Webb Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*W. Wilson White*, U. S. Attorney and *Arthur R. Littleton*, Assistant U. S. Attorney, for exceptants.

*Edward Unterberger*, contra.

KLEIN, P. J., December 7, 1956.—Decedent, John Webb, died on April 25, 1953, intestate. The principal asset of his estate, which is insolvent, was an equity in an apartment house, subject to a large mortgage, which has been sold pursuant to a decree of this court.

Morris Seidman and Sons, a partnership of which Morris Seidman is a member, real estate brokers, managed the building and collected the rents, as agent for decedent. They were continued in this capacity by the administrators.

The last statement furnished to decedent by the Seidman Company on March 3, 1953, indicated that the sum of $961.78, was due to them by decedent. Morris Seidman, individually, claims that decedent was indebted to him in the sum of $4,000, evidenced by an unrecorded judgment note. The Seidman Company has withheld from the rents collected by them subsequent to decedent's death $4,914.05, representing the $961.78, which is claimed to have been due them when decedent died, and $3,952.27, which they have applied in payment of the alleged indebtedness on the note.

It appears further that Morris Seidman and Sons acted as brokers for the sale of the apartment and were to receive a commission of $2,250 for their services. The administrators refused to pay this commission, which is being held by the Commonwealth Title Company, subject to a determination of the rights of the parties.

At the audit efforts were made to compel Morris Seidman and Sons to account for the rents they were withholding and had collected as agents for the administrators. The learned auditing judge concluded that this court lacked jurisdiction to pass upon the liability of the agent, if any, to the personal representatives of decedent arising from the collection of rents. He ruled that the rents in question "were never in the possession of the personal representatives or registered in the name of the decedent or his nominee" and hence were not such personal property as to which jurisdiction was conferred upon this court under section 301(13) of the Orphans' Court Act of August 10, 1951, P. L. 1163.

We concur in the auditing judge's conclusion that we should not pass upon the question submitted for adjudication at this time but do not agree with the reasons upon which he predicated his ruling.

It is well established that only questions pertaining to the distribution of assets actually included in the account, or which should have been included, can be presented at the audit of an account in the orphans' court. Questions which do not deal directly with distribution must be presented in some other manner. Often collateral questions are presented for hearing at the time of the audit, but this is only done as a matter of convenience to save time and expense, because, in most cases, all parties interested in the estate are before the court at the audit of the fiduciary's account. Such collateral issues are generally regarded as separate proceedings and are decided separately.

In the present case the fund in litigation has not actually been received by the administrators and has not been included in the account. The auditing judge, therefore, was correct in refusing to pass upon the matter at the audit.

In our judgment, however, the orphans' court, having jurisdiction over the accounts of a personal representative, has full authority to compel an agent, retained by him, to account for money belonging to decedent's estate and collected pursuant to such agency.

It seems clear, beyond question, that rents, dividends, or any other form of income growing out of the ownership of any property owned by decedent, real or personal, over which control was assumed by a personal representative, are subject to the jurisdiction of the orphans' court, by whomever collected. Any questions concerning the ownership of the fund may be raised by the agent or other person in possession of such property at the audit of the fiduciaries' account.

Section 301 of the Orphans' Court Act of 1951, supra, provides that the orphans' court shall have exclusive jurisdiction of:

". . .The adjudication of the title to personal property in the possession of the personal representative, or . . . [known] . . . to have been in the possession of the decedent at the time of his death."

This is substantially a statement of the law as it existed prior to the adoption of the act. See Cutler's Estate, 225 Pa. 167 (1909); Williams' Estate, 236 Pa. 259 (1912); Keyser's Estate, 329 Pa. 514 (1938); Tomkovic Estate, 368 Pa. 487 (1951); Fell Estate, 369 Pa. 597 (1952); Perri v. Chiavaroli, 370 Pa. 495 (1952); Kevra Estate, 173 Pa. Superior Ct. 229 (1953).

Was possession of the rents by the real estate agents "possession of the" administrators in the present case? In our opinion, it manifestly was. We think that the rents collected by Seidman and Sons after the date of the death of John Webb and the appointment of the administrator are "in the possession of the personal representative" within the meaning of section 301 (13), supra.

Prior to the adoption of the Fiduciaries Act of April 18, 1949, P. L. 512, an administrator could only collect the rents on decedent's real estate, with leave of court, if the personal estate was insufficient to pay debts. This has been completely changed by the 1949 Act, of which section 501 provides:

"A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied by an heir or devisee. He shall collect the rents and income from each asset in his possession until it is sold or distributed . . ."

The following comment of the Joint State Government Commission is most informative:

"With regard to personal estate, this section restates existing law. With regard to real estate, it is a distinct

departure from existing Pennsylvania law and is based on the premise that the personal representative except as stated should have the duty as well as the right to control real estate until it is sold or distributed by decree or until control is relinquished to the heir or devisee because it is not needed for administration. The theory of the drafters has been that the legal and equitable title to real estate passes to heirs or devisees as heretofore, but that real estate should be administered as personal property, with a few minor exceptions when the nature of real estate requires a different treatment. During administration the personal representative will have the same powers over real estate as he has over personal property except as the Act makes express provisions to the contrary . . ."

From earliest times possession of property in the hands of an agent of a fiduciary has been regarded as being in possession of the fiduciary. Both Williams on Executors, (11th Ed.) vol. 11, p. 1442, and Schouler on Wills, Executors and Administrators, 6th Ed., vol. 3, page 2246, two of the leading textbooks on this subject, cite the following quotation from Jenkins v. Plombe, 6 Mod. 92, an English case decided more than 160 years ago:

"And if an executor appoint another to receive a debt of his testator, and he receive it, it is now the same thing as if he had actually received it himself, and will be assets in his hands; . . ."

In Watts' Estate, 158 Pa. 1 (1893), the Supreme Court held that an attorney who has received money belonging to a decedent's estate, from an administrator whom he represented, was amenable to the jurisdiction of the orphans' court. To the same effect, see: Wanamaker's Petition, 25 D. & C. 694 (1936).

In Jeffries' Estate, 16 D. & C. 808 (1932) this court, in an opinion by Gest, J., held that the orphans' court

has jurisdiction to follow a fund belonging to a decedent's estate and to require its repayment by an innocent third party from a defaulting executor.

In Freed Estate, 86 D. & C. 592 (1954), we compelled the respondent who received an asset of a decedent's estate from the administratrix, allegedly in payment for services rendered the estate, to return the asset to a successor administrator, without prejudice, however, to the recipient's right to present a claim for the alleged services against the estate.

The administration of the estate of a decedent is one indivisible judicial proceeding, from the grant of letters appointing the administrator until his discharge. The administrator while functioning is at all times under the control and direction of the orphans' court. He is, in a sense, an officer of the court and any property received by him as administrator may be regarded as in the custody of the court.

Morris Seidman and Sons, the real estate agents, knew of the death of John Webb, decedent, and of the appointment of the two attorneys, Harvey N. Schmidt and Leon Sobel, as administrators. In collecting the rents from the apartment house, they knew they were dealing with property forming part of the estate of a decedent subject to the jurisdiction of this court. They cannot defy the authority of this court and thereby create for themselves a preferential position over decedent's other creditors.

We, therefore, conclude that the orphans' court has jurisdiction over this controversy.

The exceptions are dismissed, and the administrators are directed to file an appropriate petition requesting a citation to issue against Morris Seidman and Sons to show cause why they should not deliver to the administrators the balance of rents collected by them since the death of John Webb, which they

have retained in their custody. In making this order, we are not attempting to prejudge or pass upon the merits of the claim of any of the parties in interest, who may present their respective claims at the audit of the account to be filed by the administrators, when they receive the fund in question.